# 179-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

JOSE GONZALES III,
        Petitioner,

v.

THE STATE OF TEXAS,
        Appellee.

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 22 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

APR 22 2015

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

FROM THE COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CAUSE NO. 13-13-00011-CR.

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

|  | PAGE NO. |
|---|---|
| TABLE OF CONTENTS...................................................... | I. |
| INDEX OF AUTHORITIES.................................................. | II-V. |
| STATEMENT REGARDING ORAL ARGUMENT............................... | VI. |
| STATEMENT OF THE CASE............................................... | VII. |
| STATEMENT REGARDING PROCEDURAL HISTORY........................ | VIII-IX. |
| GROUNDS FOR REVIEW................................................... | X-XI. |
| ARGUMENTS............................................................. | 1-37. |
| CONCLUSION............................................................ | 37-38. |
| PRAYER FOR RELIEF.................................................... | 38. |
| CERTIFICATE OF SERVICE.............................................. | 39. |
| APPENDIX.............................................................. | End. |

PAGE NO.

TEXAS CASES:

Ball v. Roa, 48 S.W.3d 322.......................................... 37.

Bell v. State, 938 S.W.2d 35....................................... 20.

Bell v. State, 356 S.W.3d 528..................................... 1-2.

Campbell v. State, 163 Tex.Cr.R.545,284 123 S.W.597,600........ 13.

Cardenas v. State, 960 S.W.2d 941,947............................ 34.

Crawford v. State, 685 S.W.2d 343,349............................ 20.

Devaughn v. State, 749 S.W.2d 749 S.W.2d 62,65.................. 8.

Drake v. State, 686 S.W.2d 935,944.............................. 12-13.

Ervin v.State, 991 S.W.2d 804,856............................... 7.

Ex parte Castillo, 432 S.W.3d 457............................... 5,9.

Ex parte Cavazos, 203 S.W.3d 373................................ 5-9.

Ex parte Duffy, 607 S.W.2d 507.................................. 33.

Ex parte Ellison,609 S.W.2d 218................................. 13.

Ex parte Hawkins, 6 S.W.3d 544,556............................. 7-8.

Ex parte Johnson, 697 S.W.2d 605,612........................... 13.

Ex parte Rathnell, 717 S.W.2d 33,36............................ 8.

Ex parte Siller, 686 S.W.2d 617,618............................ 13.

Grayson v. State, 192 S.W.3d 790............................... 2.

Hill v. State, 750 S.W.2d 213.................................. 16.

Holly v. State, 460 S.W.2d 136, 137........................... 15.

Lacy v. State, 160 Tex.Crim,299 207 S.W.2d 413,414............ 15.

Landers v. State, 957 S.W.2d 558,559-60....................... 8.

Lassiter v. Shavon, 824 S.W.2d 667............................ 37.

Mendoza v. State, 1 S.W.3d 829................................ 2.

Morey v. State, 744 S.W.2d 688,670........................... 16.

Overton v. State, 552 S.W.2d 849............................. 12.

Richardson v. State, 888 S.W.2d 822,824...................... 8.

Riley v. State, 658 S.W.2d 818............................... 14.

Russel v. State, 146 S.W.3d 705,714.......................... 22.

Shackelford v. State, 516 S.W.2d 180......................... 16.

Shaw v. State, 728 S.W.2d 889,890............................ 16.

Smith v. State, 101 Tex.Cr.R.220, 123 S.W.597,600........... 13.

Stone v. State, 751 S.W.2d 579............................... 34.

Valancia v. State, 891 S.W.2d 652............................ 36.

Vaughn v. State, 239 S.W.3d 351.............................. 5.

AUTHORITIES CONT:                                                      Page No.

Waythe v. State, 553 S.W.2d 802........................................ 12.

Wooton v. State, 11 Tex.Cr.R.524, 15 S.W.2d 635.............. 13.
Williams v. State, 897 S.W.2d 351............................... 20.

Yglesias v. State, 252 S.W.3d 737.............................. 2.

Zrolkowski v. State, 233 S.W.3d 640............................ 2.

FEDERAL CASES:

Blake v. Kemp, 758 F.2d 523,533................................25.

Burney,756 F.2d. 790.....................................12,16,24.

Coleman, 802 F.2d 1233........................................25.

Dyer v. Crisp, 613 F.2d 275...................................12.

United States v. Diaz-Carreon, 915 F.2d 956...................35.

United States v. Durham, 287 F.3d 1297,1304...................3.

United States v. Willis, 6 F.3d 257...........................35.

Moyola v. Alabama, 623 F.2d 992,998...........................22.

Osborn v.Schillinger, 861 F.2d 626,627........................24.

Osborn, F.Supp.616-617........................................25.

SUPREME COURT CASES:

Anders v. California, 422 U.S.738 ............................30.

Benton v. Maryland, 395 U.S.784..............................5.

Blockburger v. U.S. 284 U.S. 299.............................5.

Brown v. Ohio, 432 U.S. 161...............................5,8,11.

Burger v. Kemp, 107 S.Ct. 1326...............................25.

Douglas v. California, 372 U.S.353...........................30.

Evitts v. Lucey, 469 U.S. 387................................11.

Faretta v. Califormia, 422 U.S.806...........................27.

grady v. Corbin, 495 U.S. 508................................5.

Illinios v. Vitale, 477 U.S. 410.............................5.

McMann v. Richardson, 397 U.S. 759......................10,11,12.

Nix v. Whiteside, 475 U.S. 157...............................26.

North Carolina v. P395 U.S.711,717...........................7.

Sanabria v. United States, 437 U.S. 54.......................8.

Strickland v. Washington, 466 U.S.688.....................10-34.

United States v. Cronic, 466 U.S.656......................27-28.

U.S. v. Dixon, 509 U.S. 688..................................5.

Von Molke v. Gillies, 332 U.S. 708..........................11./

TEXAS CONSTITUTION:

Texas Const. art.1§10........................................14.

Tex. Const. art.1§14........................................4,5.

III.

AUTHORITIES CONT:                                                    Page No.
Tex. Const. art. V§21(b)............................................ 16.

UNITED STATES CONSTITUTION:

U.S.C.A. 5..........................................................4-35.

U.S.C.A. 6..........................................................3-17.

U.S.C.A. 14.........................................................2-35.

TEXAS STATUES:

V.T.C.A. Penal Code § 19.03 (a)(2)..................................5-6.

V.T.C.A. Penal Code § 30.02.........................................5-7.

V.T.C.A. Family Code,71.003,7.005,71.0021...........................7.

 " "      Penal Code §§3.04 (a)....................................12-14.

 ""       Penal Code § 8.01........................................34.

Title 7, Penal Code.................................................12.

Title 5, Penal Code.................................................12.

         Penal Code § 3.01.........................................12.

V.T.C.C.P. art. 1.10 (1)............................................4.

 "     "      "    21.21 (a)........................................15.

 "     "      "    21.24 (a)........................................9-14.

 "     "      "    21122 (a)........................................16.

 "     "      "    1.14 (b).........................................17.

 "     "      "    1.13 (b).........................................17.

 "     "      "    31.03 ...........................................19,22.

 "     "      "    42.12 Sec.4(d)(8)(c).............................23,24.

 "     "      "    46.03............................................30.

Criminal Law keynote-1167(1).......................................10.

 "     "      "    "     "   493 ...................................333.

 "     "      "    "     "   637.2 .................................1-2.

 "     "      "    "     "   641.12(2).............................3,15.

 "     "      "    "     "   773(1)................................32.

 "     "      "    "     "   127...................................9,10.

 " "   "      "    "     " " 620(3)................................9,10.

 "     "      "    "     "   773...................................30.

 "     "      "    "     "   493...................................30.

Double Jeopardy Keynote-4..........................................5.

 "     "      "    "     "   " 134.................................5-6.

 "     "      "    "     "   " 144.................................6.

 " "   "      "    "     "   " 132.1...............................6.

                                   IVI.

AUTHORITIES CONT:

Indictment and Information Keynote-127.....................9.

"   "   "      "    "    "        "   "    129.....................9.

"   "   "      "    "    "        "   "    196.....................9.

"   "   "      "    "    "        "   "    132.....................9.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner urges the Court to allow Oral argument for the following reasons; To Wit:

Petitioner's claim of double jeopardy is based on the Cavazos case 203 S.W.3d 333 (Tex.Crim.App.2006) and the Castillo case that the State cited in their brief: Ex parte Castillo,432 S.W.3d 443 (Tex.App.-San Antonio 2014, no pet.h.).

Furthermore, this error is an error whether objected to or not. Petitioner briefed said error in his Pro/se brief which the 13th Court of appeals failed to adjudicate on its merits.

Because their is a misjoinder issue in multiple count indictment Petiitoner needs further redress from the Court to address said grounds. Also because the record was fully developed before the Court Petitioner claimed ineffective assistance of counsels on direct appeal as well as trial attorney's. Petitioner should have been given the full adjudication of ineffective assistance claim as oulined in Trevino v. Thaler,569 U.S.__(2013). Furthermore, Petitioner urges the Court for oral argument that Petitioner's attorney on direct appeal filed Anders brief and motion to withdraw, the court granted motion and Court assigned Stephen W. Byrne as attorney whom filed a motion to withdraw based on ill-health and no Anders brief. Because he was the attorney of record 13th Court of Appeals was in error and abused their discretion by ruling on Anders brief filed by attorney Fred Jiminez whom was no longer Petitioner's attorney and such Anders brief was moot by operation of law. Because the remainder of the grounds are based on ineffective assistance of counsel Petitioner urges the Court to allow oral argument.

## STATEMENT OF THE CASE

On December 12, 2011 Jose Gonzales III, Hereinstyled Petitioner was charged with Capital Murder in the course of committing a Burglary of a Habitation of one Leslie Morin, by shooting Leslie Morin with a Firearm. In Count II, Appellant was charged with Burglary of a Habitation on or about December 12, 2011 in Nueces County, Texas. There and then Intentionally and Knowingly enter a habitation without the effective consent of Vidal Rodriguez who had greater right to said property, and attempted to commit or committed the felony offense of Aggravated Assault with a Deadly Weapon.

Appellant was employed as a police officer in the City of Alice, Texas on the day of the offense. In a high profile trial Appellant was convicted on both counts by a biased and prejudicial jury. The court sentenced Petitioner to life with out parole on Count I, and life with parole on Count II. Wherein said convictions are constiutionally infirm. The trial was overwhelmed by the media and public pressure. Change of venue was warranted.

VII.

# STATEMENT OF PROCEDURAL HISTORY

Petitioner was charged by indictment with one count of capital murder during the course of committing a burglary of a habitation, and one count of burglary of a habitation with the intent to commit aggravated assault or a felony. A jury convicted him of both offenses as alleged in the indictment on December 6, 2012. The Court assessed punishment at life without the possibilty of parole for the capital murder charge and life in the Institutional Division of the Texas Department of Criminal Justice-CID for the burglary of a habitation charge. The Petitioner filed notice of appeal on December 10,2012. Petitioner's attorney of record Fred Jimenez filed an Anders brief on July 18,2013. on July 24,2013 Attorney Fred Jinenez filed a motion to withdraw as attorney. On August 16,2013, the trial court appointed Stephen W. Byrne to represent Petitioner. On September 8,2013, Stephen W. Byrne filed motion to withdraw citing ill-health and requested the court to appoint new counsel. No Anders brief was filed and no attorney was appointed. Petitioner filed motion for trial record. Petitioner filed his Pro/se brief on May 23,2014, along with request for oral argument. Furthermore, Petitioner filed a motion in the 13th Court of appeals for his trial attorney to produce the psychological report generated from his court ordered evaluation. Such report was never made part of the record. The State was ordered to file their brief. The case was due for submission on August 13,2014. The State filed thier brief on August 12, 2014 with a motion for extension of time. Petitioner filed a motion to hold said appeal in abeyance in order to respond to State's brief. On August 14,2014 the Court at affirmed in an unpublished opinion by Justice Dori Contreras Garza

VIII.

## STATEMENT OF PROC. HIST. CONT.

whom ordered a contradictory order for Motion to withdraw for attorney Fred Jimenez's Anders brief which should have been moot. Petitioner filed motion for rehearing on August 30,2014. The State filed brief agreeing with Petitioner's claim of double jeopardy wherein the San Antonio Court rendered relief for the exact same issue. Rehearing was denied on January 21, 2015.

# GROUNDS FOR REVIEW

GROUND ONE:                                                     PAGES.

TRIAL COURT ERRED IN ALLOWING PETITIONER TO BE TRIED IN SHACKLES
IN VIOLATION OF U.S.C.A. CONST. AMENDS. 6TH AND 14TH. TRIAL
COURT INFRINGED UPON PETITIONER'S PERSUMPTION OF INNOCENCE, AND
HIS RIGHT TO COUNSEL. INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT
OBJECTING TO PETITIONER BEING SHACKLED AND PROCEDURALLY DEFAULTING 1-4.
PETITIONER'S CLAIM.

GROUND TWO:
THE STATE COMMITTED DOUBLE JEOPARDY WHEN IT PROSECUTED PETITIONER
FOR MULTIPLE BURGLARIOUS ENTRIES WHERE THERE WAS ONLY ONE UNLAWFUL
ENTRY, IN VIOLATION OF TEXAS CONSTITUTION ARTICLE I,§14 AND U.S.C.-
A. CONST. AMEND. 5,,ALSO V.T.C.C.P. ART. 1.10.                   4-9.

GROUND THREE:
INEFFECTIVE ASSISITANCE OF COUNSEL FOR NOT OBJECTING TO MISJOINDER
OF TWO DISTINCT OFFENSES IN THE SAME INDICTMENT. COUNSEL DID NOT
FILE PRETRIAL MOTIONS NOR OBJECT DURING TRIAL TO MISJOINDER OF
OFFENSES THEREBY EFFECTING THE OUTCOME OF TRIAL, SUCH OBJECTIONS
WOULD HAVE RESULTED IN A DIFFERENT OUTCOME.                      9-15.

GROUND FOUR:

INEFFECTIVE ASSISTANCE OF COUNSEL : COUNSEL'S FAILURE TO FILE MOTION
TO QUASH AFFIDAVIT AND INFORMATION THAT WAS UNSIGNED, HENCE PROSE-
CUTION WAS COMMENCED UPON THE STRENGTH OF AN UNSIGNED INFORMATION. 15-19.

GROUND FIVE:

INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT FILING MOTION FOR CHANGE
OF VENUE IN HIGHLY CHARGED CRIMINAL PROSECUTION IN ACCORDANCE WITH
V.T.C.C.P. ART. 31.03, WAIVER BY ATTORNEY DEFAULTED PETITIONER'S
RIGHT TO RAISE CLAIM FOR APPELLATE REVIEW.                      19-21.

GROUND SIX:

TRIAL JUDGE ABUSED HER DISCRETION BY NOT ORDERING CHANGE OF VENUE
AFTER ITT BECAME IMPOSSIBLE TO SEAT A JURY THAT WAS UNBIASED IN
HIGH PROFILE CASE.                                             21-27.

GROUND SEVEN:
INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL ABANDONING PETITIONER,

X.

PAGES.

AND ACTING AS NO COUNSEL AT ALL, MERELY FRIEND OF THE COURT.    23=27.

GROUND EIGHT:

PETITIONER'S COUNSEL OF RECORD FOR APPEAL FRED JIMENEZ WAS INEFFEC-
TIVE AND COMMITTED A FRAUD BEFORE THE COURT BY FILING FRIVILOUS
ANDERS BRIEF, FOR SUCH ACTIONS WERE MOTIVATED BY POLITICAL ASPIRA-
TIONS AND CONFLICT OF INTEREST FRED JIMENEZ WIFE WAS THE D.A. AT
THE TIME, AND THE HIGH PROFILE NATURE OF THE CASE FORCING PETITIONER
WHO IS NOT EDUCATED IN THE LAW TO FILE PRO/SE BRIEF.            28-30.

GROUND NINE:

PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR
NOT RAISING AN AFFIRMATIVE DEFENSE OF TEMPORARY INSANITY, AFTER
ATTORNEY MADE REMARK REGARDING PETITIONER'S MENTAL STATE AT THE TIME
OF OFFENSE.                                                    33-34.

GROUND TEN:

PRSECUTORIAL MISCONDUCT: ASSISITANT DISTRICT ATTORNEY COMMITTED
PROSECUTORIAL MISCONDUCT WHEN QUESTIONING OFFICER ON STAND ABOUT
THE CHARGE THAT RELIES ON A LEGAL CONCLUSION THAT THE JURY DECIDES
FOR ITSELF.                                                    35-36.

GROUND ELEVEN:

TRIAL JUDGE ABUSED HER DISCRETION BY NOT ISSUING CURATIVE INSTRUCTIONS
AFTER STATE'S WITNESS TESTIFIED TO PREJUDICIAL EXTRANEOUS ISSUE THAT
WAS NOT RELATED TO THE OFFENSE.                                36-38.

SPECIAL STATEMENT OF HARM

13TH COURT OF APPEALS OPINION GOES AGAINST THE SISTER COURT OF APPEALS
BY DECIDING ON ANDERS BRIEF THAT WAS MOOT BASED ON THE TRIAL COURT'S
PLACING ATTORNEY STEPHEN W. BRYNE AS ATTORNEY WHO SUBSEQUENTLY FILED
MOTION TO WITHDRAW BASED ON ILL-HEALTH.
FURTHERMORE, BRIEFS WERE SCHEDULED FOR SUBMISSION ON AUGUST 13, 2014.
THE COURT RENDERED OPINION WAS RENDERED THE VERY NEXT DAY AUGUST 144
2014. WHICH WAS A BOILER PLATE RESPONSE NOT CONSISTANT WITH ANY MEANIGFUL
REVIEW. STATE'S REPLY BRIEF ADDRESS THE MERITS OF PETITIONER'S CLAIM
AND CONCEDES THAT PETITIONER CLAIM OF DOUBLE JEOPARDY IS CONSISITANT
WITH THE SAN ANTONIO'S OPINION RENDERED IN EX PARTE CASTILLIO, 432 S.W.
3D+457 466(TEX. crim. app. San Antonio 2014, no pet.h).

XI.

ARGUMENT

GROUND ONE:

TRIAL COURT ERRED IN ALLOWING PETITIONER TO BE TRIED IN SHACKLES IN VIOLATION OF U.S.C.A. CONST. AMENDS. 6TH AND 14TH. TRIAL COURT INFRINGED UPON PETITIONER'S PERSUMPTION OF INNOCENCE, AND HIS RIGHTTO COUNSEL. INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING TO PETITIONER BEING SHACKLED AND PROCEDURALLY DEFAULT- PETITIONER'S CLAIM.

COMES NOW, JOSE GONZALES III, HEREINSTYLED, PETITIONER, FILES THIS PETITIONER OF DISCRETIONARY REVIEW IN ACCORDANCE WITHTTEXAS RULES OF APPELLATE PROCEDURE RULE 68.

Petitioner contends the trial court abused its discretion in requiring Petitioner to wear shackles during trial, and the wearing of shackles was not harmless. (RR.Vol.3, Pg.126). The Following occured:

Line 3. The baliff: he has on leg irons,

Line 4. The Court: Okay, I'm just going to ask

Line 5. that you be real cognizant of the fact that when you

Line 6. Stand or sit, if you move too much the jurors

Line 7. are going to hear the leg irons, and the goal is to

Line 8. make sure that they dont realize you are incustody. So

Line 9. please make sure that you're just--you know,

Line 10. kind of aware as you stand and sit that it will

Line 11. make noise. Okay?

Line 12. All right, other than that, are we ready

Line 13. to bring them in?

From this colloquy between the court and the Petitioner the for restriants as articulated by the court line8, does not justify shackling of Petitioner. The Court of Criminal Appeals has repeatedly critized Nueces County Courts for routinely shackling Defendants without articulating a need for such restriants.

Criminal Law Keynote-637.2:

Grounds and circumstances affecting the use of restriants in genral. Essential State interest justifying shackling a defendant is found where there is a danger of escape or injury to the jury, counsel, or other trial participants. **U.S. v. Banegas, 600 F.3d 342.**

Criminal Law keynote-637.2:

Right to appear without restriants:

Routine shackling of criminal defendants is prohibited. **Bell v. State, 356 S.W.3d 528,** rehearing overruled. (Tex.App.Houston[14th Dist.]

1.

Argument Cont:

2008). Generally, a defendant has a right to be tried without being shackled, whether or not the shackles are visible to the jury; however, the trial courts has discretion to order restriants if there is showing of a manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others. **Yglesias v. State, 252 S.W.3d 773, PDR rev. ref'd (Tex.App.Houston [14th Dist.] 2007).** The harm an accused suffers when the jury sees him in shackles is that his constitutional persumption of innocence is infringed; and thus, all efforts should be made to prevent a jury from seeing a defendant in shackles unless there be a showing that there are exceptional circum-stances or a manifest need for such retriants. **Grayson v. State, 192 S.W.3d 790.** The fact that a defendant is charged with a serious felony does not provide a basis for shackling that deendant during trial; likewise, a general concern for security is not sufficient to justify such restriant in a murder trial, court stated out of concern for courtroom security and because he was on trial for murder. **-Zrolkowski v. State, 233 S.W.3d 640, PDR rev. ref'd Petition stricken 2007 WL-2403690(Tex.App. -Texarkana 2011.** Requiring a defendant to be tried in shackles without adequate reason is repugnant to the spirit of law and ideas of justice whether those restriants visible or unseen. **Grayson v. State, 192 S.W. 3d 790,** also see, **Mendoza v. State, 1 S.W.3d 829 (Tex.App.-Corpus Christi 1999)(Reversed Aug.31,1999).** The Courtof Criminal Appeals admonished Nueces County Courts for routine Shackling of defendants.

The only reason articulated by the trial court was that: make sure they in reference to the jury didn't realize Petitioner was in custody. (RR. **Vol.3,pg.126 Line 3-13** . Furthermore Petitioner was required to stand every time the jury exited or entered the courtroom as well as move to a different courtroom shackled to further voir dire jurors. Said restraints were visible to the jurors. See Vol. 3,pg.126.

The Petitioner was denied the persumption of innocence and basically all aspects of the due process under the **U.S. Const. 14th Amend, and the 6th Amends, Equal Protection Clause. Ineffective Assistance of Counsel:** Because Petitioner's counsel did not formally object to Petitioner being shackled, said counsel Procedurally defaulted said claim for purpose of direct appellate review and such deficient performance prejudiced the out come and would have resulted in a different out come.

**Criminal Law keynote-637:**
A defendant who is visibly shackled does not have the benefit of the bedrock persumption that a defendant is innocent until proven guilty

2.

**GROUND ONE CONT:**

and thus his right to a trial is fundametally compromised. U.S.C.A. Const.Amend. 14.

**Criminal Law keynote-641.1:**

The Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel. U.S.C.A. Const. Amend. 6th, 14th.

**Criminal Law keynote-637, 641.12 (2):**

The use of shackles on a defendant during trial may undermine a defendant's ability to effectively communicate with his attorney. U.S.C.A. Const. Amend 6th & 14th.

**Criminal Law keynote-637:**

The routine use of shackles on a criminal defendant in the presence of juries compromises the courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individuals' liberty through criminal punishment. U.S.C.A. Amend. 14th.

**Criminal Law keynote-637:**

Prior to the use of shackles on a criminal defendant, a trial court must make a specific finding that they are necessary for reasons particular to a given case. U.S.C.A. Const. Amend. 14.

Because this was not done and petitioner's attorney failed to object as to the needs of restraints, and appellate attorney failed to see ths error in said disparte treatment of petitioner being paraded in front of jurors shackled said case should be reversed and remanded with instructions based on the ineffective assistance of counsel claim, or in lieu remand back to the trial court and take attorneys as well as the Hon. Angelica Hernandez on vior dire.

Shackling of Petitioner without a demonstrated need compromised the formal dignity of the court and judicial proceedings and lead to harmful collateral effects. Such effects cheifly included curtailing Petitioner's ability to communicate freely with counsel because of the physical limitations imposed by shackles and simply the distraction and embarresment they caused the Petitioner. See, **Unites States v. Durham, 287 F.3d 1297, 1304 (11th Cir.2002)** ("Even if the[shackles] placed the defendant are not visible to the jury, they still may... confuse the defendant, impaired his ability to confer with counsel, and significantly affected the trial strategy he choose to follow.")

3.

GROUND ONE CONT:

Petitioner's attorney made the following statement to the prospective jurors, that tainted the whole trial process : I frankly, probaly will not be spending any time questioning that type of evidence because as I told you right from the get go, Jose gonzales is guilty of criminal homocide, the question is, what sort of criminal homocide is he in fact guilty of? See, (Vol.3,pg. 147,4-9). Because Petitioner was shackled he did not approve of such trial strategy, which made the trial process unfair, confused the Petitioner, impaired his ability to communicate, and significantly effected the trial strategy, wherein Petitioner was not informed of such defense to be promugated, but believed that temporary insanity would be the trial strategy and course his counsel would take. It appears that attorney's error for not objecting to shackling, along with attorney's unprofessional error's believing that petitioner was guilty from the start severly infringed on Petitioner's persumption of innocence, was deficient performance that reasonable effected the outcome of the case. Petitioner was made to stand for the jury on numerous occassions, not only where the shackles visible but because of the movement, the chains were heard by the jurors. In such a high profile trial, here the errors originated from the trial court's sua sponte order, and trial court's reasons for shackling the Petitioner are insufficient as a matter of law. See, **Garcia v. State, 919 S.W.2d 370,381 (Tex. Crim.App.1994).** Because of th errors appearing in the record PDR should be granted.

Ground Two:

**THE STATE COMMITTED DOUBLE JEOPARDY WHEN IT PROSECUTED PETITIONER FOR MULTIPLE BURGLARIOUS ENTRIES WHERE THERE WAS ONLY ONE UNLAWFULL ENTRY IN VIOLATION OF TEXAS CONSTRITUTION ARTICLE 1§14, AND U.S.C.A. Const. AMEND. 5,AND V.T.C.C.P. ART. 1. 10.**

Petitioner was convicted in a single trial and given multiple punishments for the same conduct, thereby invoking the jeopardy clause in the U.S. Const. and the Tex. Const. Petitioner was charged by indictment in Count I with committing Murder in the course of Burglary of a Habitation, and in Count II, Burglary of a Habitation with intent to commit Aggravated Assault or a felony. In **Article 1.10 V.A.T.C.P.** states: No person for the same offense shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon for trial for the same offense; after verdict of not guilty in a court of competent jurisdiction.

The rule is a State may not place a defendant in double jeopardy;

4.

GROUND TWO CONT:

U.S. Const. Amend.V; Tex. Const. Art. I§14; Benton v. Maryland, 395 U.S. 784 (1969). This means that the State may not: (1) prosecute a defendant for the same offense after an acquittal; and (2) prosecute a defendant for the same offense after a conviction; or (3) obtain multiple punishments in a single trial for the same offense. **Illinios v. Vitale, 477 U.S. 410 (1980); Brown v. Ohio, 432 U.S. 161 (1977).**

What we are concerned here is that Count I for Capital Murder, was predicated on a burglarious entry in order for it to be upgraded from felony murder to Capital murder. See, **Tex. Penal Code 19.03.** Count II, under **Penal Code 30.02** Burglary of a Habitation to commit a felony (Aggravated Assault). The "same elements" test found in **Blockburger v. U.S. 284 U.S. 299 (1932)** questions whether the State is attempting to punish the defendant twice for the same offense. This test asks the Court to exmine each statute to determine whether each requires a proof of an additional element the other does not. The Court abandoned a "same conduct" test by overruling **Grady v. Corbin, 495 U.S. 508 (1990),** in **U.S. v. Dixon, 509 U.S. 688 (1993).** But in double jeopardy/multiple punishment claims, Blockburger is not the solo focus. **Ervin v. State, 991 S.W. 2d 804, 814 (Tex.Crim.App.1999).** If the Court has actual legislative intent of the two statutes, that intent is the critical factor. If not then look at **Girdy v. State, 213 S.W.3d 315,319 (Tex.Crim.App.-2006)**(if the prosecution, in proving one element of one offense, also necessarily proves another charged offense, the other offense is a lesser included offense; if so, there must be clear legislative intent to punish the offense seperately or multiple punishments are barred.)

### DOUBLE JEOPARDY QUESTIONS[

The allowable unit of prosecution for burglary is the indiviual entry, not the number of indentifiable crimes committed once the defendant makes the unlawful entry. **Ex parte Cavazos, 203 S.W.3d 333 (Tex.Crim.App.2006). Vauhgn V. State, 239 S.W.3d 351 (Tex.App.-San Antonio 2007).** Here we have Petitioner sentenced to multiple punishments for one unlawful entry. See, **Ex parte Castillo, 432 S.W.3d 457 (Tex.App.-San Antonio 2014, no pet.h.).**

Double Jeopardy Keynote-4:

Double jeopardy clause impose few, if any, limitations on the legislative power to establish and define the offense. **U.S.C.A. Const. 5.**

Double Jeopardy keynote-134:

5.

**GROUND TWO CONT:**

The legislature determine whether offenses are the same for double jeopardy purposes by defining the allowable unit of prosecution; the legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. **U.S.C.A. Const. Amend. 5.**

**Double Jeopardy Keynote-144:**

Convictions for Capital Murder during the course of committting Burglary of a Habitation, and Burglary of a Habitation intent to commit a Felony (Aggravated Assault) violated double jeopardy clause; even though there were two victims, the allowable prosecution was the unlawful entry. Not the complainant, and the defendant was punished multiple times for a single unlawful entry. **U.S.C.A. Const. Amend. 5; V.T.C.A. Pen. C. § 30.02 (a).**

**Double Jeopardy Keynote-132.1:**

When a defendant is conviction of two or more offenses that are the same for double-jeopardy purposes, the conviction for the most serious offense is retained, and the other conviction is set aside. **U.S.C.A. Const. Amend. 5.**

**Double Jeopardy keynote-132.1:**

The "most serious offense" which is retained when convictions violate double jeopardy clause is the offense of conviction for which the greatest sentence was assessed; other factors such as the degree of thefelony, range of punishment, and rules governing parole eligiblity and awarding of good-conduct time, are not considerations; overruling **Landers v. State, 957 S.W.2d 588, U.S.C.A. Amend 5.**

The issues before us is whether convicting Petitioner of two burglarious entries each with a different complianant but arising from a single unlawful entry of a habitation constitues double jeopardy? The prosecution theory in the charging instrument that Petitioner committed Capital Murder in the cousre of committing Burglary of a Habitation in Count I. The prerequisite of felony murder upgraded to capital murder is outlined in **V.T.C.A. Penal Code § 19.03. (a)(2).** Wherefore without the burglarious entry Petitioner could only have been convicted of murder as defined. Thereby an integral part of the conviction in Count I is the burglary of a habitation. It was established at trial that Petitioner kicked in the front door, shot at Vidal Rodriguez, then

6.

GROUND TWO CONT:

then proceeded to the back bedroom and shot his estranged wife multiple times. See, RR.Vol.4. pg.11-17. the theory of the indictment differed from the theory at trial. Wherein the capital murder was placed in a stratigic position of appearing first, when in fact it was the result of count II Burglary of a Habitation intent to commit a felony (Aggravated Assault). Burglary of a Habitation is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed. **V.T.C.A. Penal Code § 30.02 (a)(2), V.T.C.A. § 22.02** Aggravated Assault (1) Causes serious bodily injury to another, including the person's spouse; or (2) Uses or exhibits a deadly weapon during the commission of the assault and causes seriously bodily injury to a person whose relationship to or association with the defendant is described by **Section 71.003, 71.0021 (b), or 71.005 (b),** An Offense under this section is a felony of the second degree if; To end of statute.

Even thou the burglary of a single home had two victims, the allowable units of prosecution was the the unlawful entry, not the complainant. Petitioner was punished multiple times for a single entry. Wherein the complaint in retrospect allowed for conviction of one course of action. The punishment is contrary to the legislative intent of the burglary statute and violation of the **U.S.C.A. Const. Amend.V.,** Provides that no person "shall... be subject for the same offence to be twice put in jeopardy of life or limb..." The Supreme Court has concluded that the Fifth amend. offers three seperate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. **North Carolina v. Pearce,** 395 U.S. 711, 717 89 S.CT. (overruled by **Alabama v. Smith,** 490 U.S. 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)); **Lopez v. State,** 108 S.W.3d 293, 295-98 (Tex.Crim.App.2003). The court has pointed that "[a] defendant suffers multiple punishments in violation of double jeopardy clause when he is convicted of more offenses than the the legislature intended. **Ervin v. State,** 991 S.W.2d 804, 807 (Tex.Crim.App.1999)(citing **Ball v. State, v. United States,** 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). However the double jeopardy clause imposes few, if any, limitations on legislative power to establish and define offenses. **Ex parte Hawkins,** 6 S.W.3d 544, 556 (Tex.

7.

GROUND TWO CONT:

-Crim.App.1999), (citing Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 221, 53 L.Ed.2d 187 (1997)). The legislative therefore determines whether offenses are the same for double-jeopardy purposes by defining the "allowable unit of prosecution." Id. (citing Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170 57 L.Ed.@d 43 (1978)). The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. Id.,consequently, the scope of Double Jeoprdy Clause protection against multiple punishments under the burglary statute depends on ascertaining the allowable unit of prosecution. Petitioner urges the Court that: "the gravamen of a burglary is the entry itself, without effective consent of owner and with the requisite mental state. Devaughn v. State, 749 S.W.2d 62, 65 (Tex.Crim.App.1998). This Court has found that, when a burglary is committed, the harm results from the entry itself. Richardson v. State, 888 S.W.2d 822, 824 (Tex.Crim.-App.1994). The offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed. Id. The allowable unit of prosecution for an assaultive offense is each complainant. See, Phillips v. State, 787 S.W.2d 391, 394-95 (Tex..Crim.-App.1990)(Assault); Ex parte Rathnell, 717 S.W.2d 33,36 (Tex.Crim.App. 1986)(Voluntary Manslaughter). Burglary, however is not an assaultive offense; rather, its placement within Title 7 indicates that the legisla-ture determined burglary to be a crime against property. Thus the complainant is not the appropriate allowable unit of prosecution in burglary, rather, the allowable unit of prosecution is the unlawful entry. Petitioner's conviction violates double jeopardy, because he was punished multiple time for a single entry. When a defendant is convicted of two or more offenses that are the "same" for double-jeopardy purposes, our case law tells us that the conviction for the most serious offense is retained and the other conviction is set aside. See, Landers v. State, 957 S.W. 2d 558,559-60 (Tex.Crim.App.1997). Landers states that the "most serious" offense is determined by the degree of the felony, range of punishment and sentence imposed. Landers is overruled by Ex parte Cavazos'.
Third reason applies some what differently to the double —jeopardy context than the misjoinder context, we fashioned a rule designed to best as-certain what offense the State would have elected to proceed upon at trial. We did so because, in the misjoinder context the State is not permitted to prosecute both offenses at the same time. Hence our evaluation of the seriousness of the offence, with the sentence coming into

8.

GROUND TWO CONT:

play only when the range of punishment and the degree of the offense being the same. It is this very reason why petitioner need competent counsel, for the complexity of such issue, Petitioner's counsel acted as no counsel at all. We shall visit the misjionder doctrine in our next point of error. For inasmuch the record reflects that double jeopardy has appeared from the record, to the the degree that both sentences are equal in respect that Petitioner was sentence to life on both counts, and the Court has ruled in **Cavazos, 203 S.W.3d 333 (Tex.Crim.App.2006) (Tex. Crim.App.2006).** The most serious retained. In this case both sentences are equal. There being jeopardy appearing from the record said convictions should be reversed and remanded with instructions. See, also **Ex parte Castillio, 432 S.W.3d 457 (Tex.App.-San Antonio 2014, no pet. h.).**

Ground Three:

### INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING TO MISJOINDER OF TWO DISTINCT OFFENSES IN THE SAME INDICTMENT

COUNSEL DID NOT FILE PRETRIAL MOTION NOR OBJECT DURING TRIAL TO MISJOINDER OF OFFENSES THEREBY EFFECTING THE OUTCOME OF THE TRIAL, SUCH OBJECTION WOULD HAVE RESULTED IN A DIFFERENT OUTCOME.

Criminal Law Keynote-620(3):

Mandatory right to severance of offenses only applies to joinder of property offenses. **V.T.C.A.Penal Code § 3.04(a).**

Indictment and Information Keynote-127:

State is prevented in the prsence of objection, from alleging more than one non-property offense in a single indictment, regardless of number of transactions involved. **V.T.C.C.P. art. 21.24.**

Indictment and Information Keynote-127, 129(1):

For State to avoid joinder problems, indictment for non-property offenses, whether arising from one transaction or seperate transactions, should contain only one count in as many paragraphs are asnecessary to allege various manner and means of committing the one alleged offense. **V.C.C.P. art. 21.24 (a).**

Indictment and Information Keynote-196(7):

To avail himself of pleading limatations with respect to nonproperty offenses, defendant should file pretrial motion to quash indictment or urge, sometime during trial, that State make an election; failure to object will result in waiver of pleading reqirements. **V.A.T.C.C.P. art. 21.24.**

Indictment and Information Keynote-132(2):

Trial court has discretion to delay State's election due to misjoinder

GROUND THREE CONT:

of nonproperty offense in a single indictment, once requested, until submission of charge to jury; however, if trial court unecessarily delay's election and thereby prejudices defendant, trial court may be found to abused its'discretion. **Vernon's Ann. Texas C.C.P. art 21.24(a).**

**Criminal Law Keynote-1167(1):**

If trial court fails altogether to require State to cure misjoinder of nonproperty offenses, whether by denying motion to quash indictment or denying motion to force election, appellate court must reverse convictions. **Vernon's Ann. Texas C.C.P. art.21.24(a).**

**Indictment and Information Keynote-127:**

Indictment was invalid on basis of misjoinder where indictment alleged more than one nonproperty offense and alleged nonproperty offenses and property offense.

## Ineffective Assistance of Counsel

Petitioner's counsel not filing motion to sever offenses, nor motion to Elect, nor objecting to misjoinder, resulted in Petitioner's claims to be procedurally defaulted for purposes of appellate review. Prejudiced the outcome of the trial, resulted in the convitions of two offenses for the same transaction and resulted in seperate sentences for life. Because of counsels deficient performance there is reasonable probability that the outcome would had been different. Such action by Petitioner's counsel gave the State a tactical advantage over Petitioner, which result-ed in the trial being unfair and jury biased. U.S.C.A. Const. Amends. 6th & 14th.

Counsel's failure to file pretrial motion to quash, nor object was far "below the range expected of reasonable, professional competent assistance of counsel." Counsel's performance thus "did not measure up to the stan-dared requried under the holding in **Strickland, 466 U.S. 688(1984),** and [if it had] there is a reasonable probability that the results would have been different in the sentencing phase." Under the applicable State procedures there would have been an election, and the Petitioner would not have to face two offenses under the same jury.

Turning to the prejudice issue, that there was a "reasonable probability that, but for counsel's unprofessional errors, the results of the pro-ceedings would have been different." **Strickland, 466 U.S. at 694.**

## Counsel Abandoned His Client

The Supreme Court has long "recognized that 'the right to counsel'"Under the the Sixth Amendment. **Strickland v. Washington, 66 U.S. 688,686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674(1984);** Quouting **McMann v. Richarson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 25 L.Ed.2d 763 (1970)),**

10.

GROUND THREE CONT:

United States v.Cronic, 466 U.S. at 656, 104 S.Ct. at 2045; Anders v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.ed.2d 493(1976). "The benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 2064. An effective attorney "must play the role of an active advocate, rather than a mere friend of the court. Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d. 821 (1985). Over forty years ago, justice Black articulated the Sixth Amendment right to counsel as follows: "The right to counsel guaranteed by the Constitution contemplate the service of an attorney devoted soley to the interest of his client are the prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provisions. And nowhere is this service deemed more honorable than in a case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is perculiary abhorrent." Von Molke v. Gillies, 332 U.S. 708, 725-26,68 S.Ct. 316, 342, 92 L.Ed.2d. 309 (1948). Similarily, an attorney who adopts and acts upon a belief that his client should be convicted "fail[s] to function in any meaningful sense as the Goverment's adversary." Cronic, 466 U.S.-666, 104 S.Ct. at 2051. Whether the attorney is influenced by loyalties to other defendants, third parties, or goverment, "if [he] entirely fails to subject the prosecution's case to meaningful advesarial testing, then, there has been a denial of Sixth Admendment rights." Id., 659 104 S.Ct. at 2047. The State's duty to ensure effective assistance of counsel goes further than the actual breakdowns in the adversary process. In Strickland, the Court, considered when a defense attorney may be Constitutionally ineffective "simply by failing to render 'adequate legal assistance." 466 U.S. 344, 100 S.Ct. at 1716 (Quoting Culyer). When the trial or sentencing process is rendered unreliable because it has clearly lost its adversary character, the Sixth Admendment violation is clear. When an ineffective assistance claim rests exclusively on the inadequacy of an attorney's strategic legal decision, however, the process retains its formal adversary nature. In this situation, the defense attorney may have advocated his client's interest to best of his ability. Nevertheless, the Court has held that if the attoney's inadequacies fall below that of a reasonable competent attorney and his errors may have effected the outcome of the proceeding, through formally adversarial, is deemed

11.

**GROUND THREE CONT:**

inadequate to satisfy the Sixth Amendment. See, Strickland, 466 U.S.-686 104 S.Ct. at 2063. The Court in Strickland adopted a two-prong test to help lower corts determine when errors in legal decision-making alone effectively render the guilt process nonadversarial. First, an attorney should be judged by an objective standared focusing on the defense attorney's knowledge at the time of the relevant proceeding. **Id.** at 687-88, 104 S.Ct. at 2064-65. Reveiwing courts should avoid hindsight and second-guessing, and extend deference to counsel's tactical judgments. at 689, 104 S.Ct. at 2065. Courts must however, determine reasonably that such investigations were not necessary. **Id.** at 691, 104 S.Ct. 2066. We defined the reasonableness standard as "the 'excersie [of] the skill, and judgment and diligence of a reasonable competent defense attorney.'" See, Burney, 756 F.2d at 790 (qouting Dyer v. Crisp, 613 F.2d 275,278 (10th Cir.)(enbanc), cert. denied, 455 U.S. 945, 100 S.Ct. 1342 63 L.Ed. 2d 779 (1980)). Though the Court intended the prejudice standard to be flexible, See Strickland, 466 U.S. 696, 104 S.Ct. at 2069, it emphasized that a "defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." **Id.** at 693, 104 S.Ct. 2069.

**WHERE ATTORNEY'S DEFICIENT PERFORMANCE PREJUDICED THE PETITIONER.**
The mandatory serverance under § 3.04(a), only applies to joinder of property offenses, [property offenses are those offesnses listed under Title 7 of the **Penal Code.**] Overton v. State, 552 S.W.2d 849(Tex.Crim.-App.1977), nonproperty offenses all offenses other than listed under Title 7 of the **Penal Code.** See, Waythe v. State, 533 S.W.2d 802 (Tex.App.-1976). Capital Murder is not a property offense. It is listed as an offense against the person under **Title 5** of the **Penal Code. V.T.C.A.** Penal Code 19.03. However, the right to force an election, which follows from implicit statutory restrictions relating to the manner in which non-property offenses may be joined in an indictment, is supported by pre-cedent, it holds that the legislature, by its admendment of **article 21.24, V.A.C.C.P.,** has implicitly prevented the State from alleging, in single indictment, two or more nonproperty offenses if those offenses arose out of the same criminal "incident, act or transaction." Generally, "trans-action" has come to mean a criminal event and the various particular offenses, committed within that event. See, **Drake, supra,** at pp.945-49 (Petitioner's original brief Appendix & pg.16). The starting and the ending point of the event depends upon the definition thios Court applies to the facts. **Id.,** at least five such definitions has been applied constantly. See, **Practice Commentary, V.T.C.A., Penal Code, §3.01,** See

12.

GROUND THREE CONT:

also **Ex parte Ellison**, 699 S.W.2d 218 (Tex.Cr.App.1985)(presence of one transaction is "obvious"); **Ex parte Siller**, 686 S.W.2d 617, 618(Tex.Cr.-App.1985). (Transaction=Whatever parties agree it means); **Drake, supra** at 940, n.3,(Transaction=all conduct directed at accompolishment of single criminal objective); **id.**, at 947 (Transation=all conduct resulting from single guilty impulse); **McIntire v. State**, 698 S.W.2d 652, 656 (**Tex.Cr.App.1985**)(Transaction=all conduct occurring within close time frame and single guilty intent running through acts); **Fortune v. State**, 699 S.W.2d 706, 707 (**Tex.App.-Beaumont 1985, pet.pending**)(Transaction= conduct directed at a particular victim). Drake v. State, 686 S.W.2d 935, 944 (**Tex.Cr.App.1985**). From our reasoning in **Drake, supra,** we must conclude that **article 21.24, supra,** implicitly prevents the State from alleging both property and nonproperty offenses together in the same indictment. Inaddition, our common law has long prevented the State from alleging, in a single indictment, more than one nonproperty offense arising out of seperate transactions. **Campbell v. State**, 163 **Tex.Cr.** 545, 294 S.W.2d 125, 128 (1956)("an indictment charging seperate and distinct offenses in different counts is subject to the objection of misjoinder...") See also, **Smith v. State**, 101 Tex.Cr.R. 220, 123 S.W. 597, 600 (1909). Taken together, these pleading limitations prevent the State, **in the presence of an objection**, from alleging more than one nonproperty offense in a single indictment, regardless of the number of transactions involved, Consequently, distinctions based upon the "number of transctions" present have been rendered meaningless for misjoinder purposes. "Transactions" are still relevant for the purposes of limiting convictions resulting from a single jury verdict, see 37.07 V.A.C.C.P. and **Ex parte Siller**, 686 S.W.2d 617 (**Tex.Cr.App.1985**)(one two convictions in same trial reversed, in absence of objection, because both nonproperty offenses arose out of the same transaction) with **Drake,supra,** (both convictions in the same trial affirmed, in absence of objection, because each nonproperty offense arose from seperate transaction); **Cf. also Ellison, supra** (one of two convictions in same trial reversed, in absence of objection, because both nonproperty offenses arose from the same transaction); but See and **cf. arts.** 37.10 and 44.24 (repealed); **Wooten v. State**, 11 **Tex.Cr.r.** 524, 15 S.W.2d 635, 636 (1929)(Appellate Court lacks authority, even in the absence of objection, to reform jury verdict to reflect single conviction; reversal of each conviction is required; number of transactions irrelevant). See also and **cf. Ex parte Johnson**, 697 S.W.2d 605, 612 (**Tex.Cr.App.1985**)(Clinton, J. dissenting).

13.

GROUND THREE CONT:

Moreover, these differences continue despite the absence of any use of the term "transqction" in **article 37.07 supra.** However, we have no opertunity presently to resovle these ambiguties because Petitioner seeks reversal on Ineffective assistance of counsel. For the State to avoid joinder problems, an indictment for a nonproperty offense, whether arising one transaction or seperate transactions should contain only one count an as many paragraphs as necessary to allege the varoius manner and means of committing the alleged offense. A "Count" is the portion of an indictment that charges a distinct statutory offense. **22 Tex. Jur. 3d 655, Criminal Law, §2370.** The presence of more than one count in an indictment therefore, would necessarily mean that more than one offense had been charged. A "paragraph" is a sunset of a count and is used to charge alternative methods of committing the same statutory offense. **Art.21.24(b0, V.A.C.C.P., Riley v. State, 658 S.W.2d 818 (Tex.App.-FortnWorth 1983 no pet.).** The presence of seperate paragraphs within a single count, therefore, would not signfy the charging of more than one statutory offense, but rather signfy the alternative manner and means of committing the same statutory offense. **Riley, supra** (alternative manner or means of committing Murder may be charged in seperate paragraphs of same indictment). We donot decide whether the implicit pleading requirements of **article 21.24, supra** allow the State to join nonproperty offenses through seperate indictments. However, even if the State could successfully join nonproperty offenses for a single trial through seperate indictments, it would still face at least two (2) remaining procedural hurdels that might prevent it from obtaining more than one conviction in a single trial. First, a defendant might still have a constitutional right to request serverance of offenses into seperate trials. **Art. I § 10 Tex. Const., Ex parte Quintanilla, 151 Tex.Cr.R. 328 207 S.W.2d 377, 378 (1948)** ("...[T]he trial of all four seperate cases before the jury at the same time over [defendant's] objection deprived him of the valuable right of trial before an impartial jury in contravention of **art. 1, Sec. 10, of the State Constitution....**") Second, even in absence of an objection, it would seem that a trial court only has authority to accept a general verdict from the jury in a trial for nonproperty offenses. **Art. 37.07 supra; See n.10, ante, at p.182.** We believe that, following our abandonment of the Carving Doctrine, the State effectively will have to obtain multiple convictions for nonproperty offenses through multiple convictions for nonproperty offenses through multiple trials until the legislature alters pleadings and verdict instructions. Given the mandatory serverance under **§ 3.04, supra,**

14.

**GROUND THREE CONT:**

the same practical result is likely to follow when the State attempts to obtain multiple convictions for property offenses. Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. Here, the counsel should have filed a pre-trial motion to sever, as well as objected during trial. For there is a strong probability that the outcome would have been different. Such deficient performance prejudiced the outcome of the trial and resulted in two convictions for the same transaction, in one burglarious entry. also, overwhelmed the Petitioner, by forcing him to be tried by the same jury for multiple offenses. said deficient performace by Petitioner's attorney, resulted in Petitioner being tried by a bias jury. It has appeared from the record that reversible error has appeared and such cause should be reversed and remanded to the trial court, or in lieu, dismissed with prejudice.

**GROUND FOUR:**

**INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL'S FAILURE TO FILE MOTION TO QUASH AFFIDAVIT AND INFORMATION THAT WAS UNSIGNED, ⹂HENCE PROSECUTION WAS COMMENCED UPON THE STRENGTH OF AN UNSIGNED INFORMATION.**

Petitioner's attorney failed to file a motion to quash the Information that does not have a signature on it. We are left with the proposition that the case proceeded to a conclusion with no documentation in the file to reflect that Mark Skurka or anyone else signed the Informtion charging Petitioner with an offense a futher jurisdictional defect of itself. **Holly v. State, 460 S.W.2d 136, 137 (Tex.Crim.App.1970).(See Exhibit "A" in Petitoner's appellate brief). T.C.C.P. Ann. art. 21.21(a), Lacy v. State, 160 Tex.Crim. 95, 267 S.W.2d 139, 141 (1948).**

Because Petitioner is in need of an attorney at every step of the proceeding it is ephasized here that attorney's skill and knowledge of the laws and practices of a criminal trial and proceedings.

**Criminal Law Keynote-641.13(2):**

Performance of defense counsel was not only contitutionally unreasonable and ineffective, but counsel abandoned required duty of loyalty to his client; counsel did not simply make poor strategic choices; he acted with reckless disregard for his client's best interest and, at times, apperantly with the intention to weaken his client's case. **U.S.C.A. Const. Amend. 6th.**

15.

GROUND FOUR CONT:

Because the Information and the Affidavit are not signed, it was attorney's duty to file motion to quash the information and indictment. Such an Information and Indictment has held to be void. See, Holly v. State, 460 S.W.2d 136, 137 (Tex.Cr.m.App.1970); also See, Shackelford v. State, 516 S.W.2d 180 (Tex.Crim.App.1974); Thomas v. State, 474 S.W.2d 236, 237 (Tex.Crim.App.1971)(fundamental error requiring reversal without point of error on appeal); See also, Morey v. State, 744 S.W.2d 688, 670 (Tex.App.-San Antonio 1988) no pet.)(granting relief based on trial court objection and point of error on appeal). The Information fails to meet the requirements of Tex.Code of Crim. Proc. Ann. art.21.22(Vernon's 1989). Decisions like Holly, Thomas, and Shackelford, which apparently granted relief without objection, predate the enactment of T.C.P. art. 1.14(b)(Vernon's Supp.1990), which requires a pretrial objection to defect of form or substance in an information in order to obtain appeallate review. Hill v. State, 750 S.W.2d 2, 3, (Tex.App.-Forth Worth 1988, pet.ref'd); Shaw v. State, 728 S.W.2d 889, 890 (Tex.App.-Houston[1st Dist.] 1987, no.pet.); See Tex.Const. art. V § 21(b). They also predate enactment of Tex.R.App. 52(a), which requires a trial court objection, motion, or request as a predicate of appeallate review. We conclude that these statutes, rules, and constitutional developments change the result that would otherwise be required by decisions like Holly. It is because of attorney's errors in allowing a trial to proceed to an conclusion without any one signing an Information or Indictment, that rendered the process fundamentally defective. It is here that Petitioner's attorney's knowledge, and skill comes to bear. (Remember Petitioner had Three(3) attorneys at trial). the Supreme Court in Strickland adopted a two-prong test to help lower courts determine when errors in legal decision-making alone effectively render the guilt determination process nonadversarial. First an attorney should be judged by an objective reasonableness standard focusing on the defense attorney's knowledge at the time of the relevant proceedings. We defined the reasonableness standard as "the 'excerise [of] the skill, judgment and diligence of a reasnable competent defense attorney.'" Citing, Burney, 756 F.2d at 790; Criminal Law Keynote-641.13(14): Constitutional standard for attorney performance is that of reasonable effective assistance, which is defined as excersie of the skill, judgment and diligence of a reasonable competent defense attorney. U.S.C.A. Const. Amend. 6. The Court intended the prejudice standard to be flexible, See Strickland, 104 S.Ct. at 2068. T.C.C.P. art. 1.14 Waiver of Rights:

16.

GROUND FOUR CONT:

it emphasized that a "defendant need not show that counsel's deficient conduct more likelely than not altered outcome of the case." Instead the defendant bears the burden of showing "that there is reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have come out different. a reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694, 104 S.Ct. at 2068. **T.C.C.P. art. 1.14 Waiver of Rights:** (a) the defendant in criminal prosecution for any offense may waive any rights secured to him by law except that a defendant in a capital felony case may waive the right of trial by jury only in the manner permitted by **art.1.13(b)** of this code. See also, sec.(b) of this Code. Punishing a lawyer's intentional and unintentional errors by closing the courthouse door to his his client is both senseless and misdirected method of deterring the slight of State rules. It is senseless because unplanned and unintentional action of any kind generally is not subject to deterrance; and, to the extent that it is hoped that a threatened sanction addressed to the defense will induce greater care and caution on the part of the trial lawyers, thereby forestalling negligent conduct and error, the potential loss of valuable State remedies would be sufficient to this end. And it is misdirected sanction because even if penalization of incompetence or carelessness will encourage more through legal training and trial preparation, the Petitioner, as opposed to his lawyer, hardly is the proper recipent of such a penalty. Espicially with fundamental constitutional rights at stake, no fictional relationship of principal-agent or the like can justify holding the criminal defendant accountable for the naked errors of his attorney. This espicially true when so many indigent defendants are without any realistic choice in selecting who ultimately represents them at trial. Indeed, if responsibility for error must be apportioned between the parties, it is the State, through its attorney's admissions and certification policies, that is more fairly held to blame for for the fact that practicing lawyers too often are ill-equipped to act carefully and knowledgeably when faced with decisions goverened by State procedural requirements. Hence, Petitioner agrees with the proper functioning our system of criminal justice, necessarily places heavy reliance on the professionlism and the judgment of trial attorneys. Petitioner was denied his rights of effective assistance of counsel guaranteed by **U.S.C.A. 6, Amend., U.S. Const.** A system that ascribes the absolute forfeiture of Petitioner's constitutional claims where his

17.

## GROUND FOUR CONT:

lawyer manifestly excersies no professional judgment at all-where care-lessness, mistakes, or ignorance is the explantion of the procedural defaults. It is regrettable that certain errors that might have been cured earlier had trial counsel acted expenditiously must be corrected collaterally and belatedly. Hence, Petitioner's attorneys was deficient and such deficient conduct prejudiced the trial, to such an extent that there is a reasonable probability that the outcome wouls have been diff-erent. this is just one of the litanies of errors made by counsel. When Petitioner's counsel addressed the venire, see **Vol.5.,pp.99:**

Line 20: Mr. Woerner: May it please the court,

Line 21: Counsel for the State, ladies and gentleman of the jury.

Line 22: Now, This is a kind of interesting case for me, I've

Line 23: been doing this for over 30 years. I've probably tried

Line 24: way more than 30 felony cases. I've tried over

Line 25: a dozen murder casese. I've found myself in

Pg.100:

Line 1: front of a jury telling them that my client is guilty of

Line 2: murder. That's never happened. I guess it's because we

line 3: have sorts of a unique set of facts and circumstances.

Here the attorney shows his disenchantment with the case and virtually gift wrapped his client. Here we have an experienced attorney with over 30 years of experience, over 12 murder trials, (he does not say how many he has actually won), See **RR. Vol.4,pg.99,20-25.** How in the name of Justice he does not file the requsite pre-trial motions that would have changed the outcome of the proceedings? There is a probability that the outcome of the trial would have been different! We have one or two things in operation here; either the attorneys' virtually sabotaged the Petitioner's defense, or was an ingenious trial strategy knowing that, because of the high profile nature of the case, and the particular judge presiding over the trial would guarantee this case would not survive Appellate review in a meaningful scrutiny. Such actions negated Petitioner's persumption of innocence. Because of the aforementioned acts and ommissions of Petition-er's attorney which did not subject the State's case to the adversarial testing process. It has appeared from the record see, **(Exhibit "A")** that said indictment, information, and affidavit does not have the required signature, thereby notconferring jurisdiction and such procedural default by attorney of record rendered ineffective assistance of counsel and said cause should be reversed and remanded with instructions.

GROUND FIVE:

### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR NOT FILING MOTION TO CHANGE VENUE IN HIGHLY CHARGED CRIMINAL PROSECUTION IN ACCORDANCE WITH V.T.A.C.C.P. ART. 31.03, SAID WAIVER BY ATTORNEY DEFAULTED PETITIONER'S RIGHTS TO RAISE GROUND FOR APPELLATE REVIEW.

Petitioner complains that attorney's deficient performance prejudiced the outcome of the trial. Petitioner an Alice police officer was the subject of extensive media coverage in the county and surronding counties wherein the instance offense took place. Furthermore, the internet and the social media followed said case. Petitioner was the subject of a documentray, wherein a series of local television stations broadcast the events and circumstances surrounding the instant offense. See App. Brief (Exhibit "G"). Under art. 31.03 (a) a change of venue may be granted in a felony or a misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes; the truth and sufficiency of the court shall determine:

1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and

2. That there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial.

Said publicity was pervasive, prejudicial, and inflammatory. Here we are concerned with the attorney not filing the pre-trial motion for change of venue and whether said attorney by his deficient performance prejudiced the Petitioner? We must go to the record to ascertain if in fact attorney's deficient performance prejudiced the Petitioner. The court asked the potential jurors (Vol.2,pg.30, line:6-23). Anyone who knows about the case through the media? 2,3,5,6,7,8,9,10,11,13,16,17,18,19,21,22,24,25,26,27, 29,30,31,33,34,35,37,41,42,43,44,45,46,48,49,53,54,55,56,58,59,61,62,63, 64,67,68,69,70,71,72,74,77,78,80,83,84,86,87,90,93,94,96,99,100. Who has personal knowledge, 17- Thos e who have already made up their minds who cannot be fair and impartial (Vol.2,pg.30,line:23-25.) 2,5,13,25,26,27,29, 30,31,34,35,41,44,45,58,59,63,68,71,80,84,87,88,90,94,96. In (Vol.2.,pg. 58,1-25,pg.59, 1-25, pg.60, 1-25), juror no.2 explians in detail about the extensive coverage in the Caller Times. She describes the kidnapping of

Petitioner's son, wherein she has has formed an opinion as to the violence in the case, also defense attorney Mr. Woerner Stated: "he never

19.

GROUND FIVE CONT:

seen so many people who have their minds made up in a case, even cases that had more publicity. (Vol.2,pg.56, 23-24.) Defense attorney should have immeadiately filed motion for change of venue, knowing from the percentage of potential jurors that had already formed a strong opinion about the guilt of the Petitioner, that his client could not recieve a fair and impartial trial. "A defendant must show an ability to obtain an impartial and fair trial. Coupled with counsels' disenchanment Petitioner could not recieve a fair and impartial trial because defense counsel had already given up. See, **Williams v. State, 897 S.W.2d 351 (Tex.Crim.App.),** cert. denied, 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995). To justify a change of venue based on media attention, a defendant must show that the publicity about the case was purvasive, prejudicial, and inflammatory. **Bell v. State, 938 S.W.2d 35 (Tex.Crim.App.1996), cert. denied,** 522 U.S.827, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997). Petitioner's attorney did not move for change of venue based on recent and significant amounts of media coverage and that publicity regarding similar cases had the effect of creating greater prejudice, bringing "some afore-thought to people" and making it "very hard" to find a fair and impartial jury. Petitioner could have called a number of witnesses that were listed on the prosecutions witness list for this eventuality. The prosecution was prepared to fight a change of venue motion, witnessess from several television stations, newspapers, etc., were prepared to testify to the number of potential jurors exposed to these stories. See, **(Appellant's brief Exhibit"C").** Petitioner's attorney could have produced the requisite affidavits needed to bloster his client's need for change of venue. See, **(Clerk's Record, pgs.30,32,and 43).** Said media coverage was inflammatory, pervasive, and prejudicial, in as much that the panel that appeared a great percentage of the array who had already made up their minds abut Petitioner's guilt, who could not be fair and impartial. More than ½ 70% of the panel members. See, **(RR. Vol.2,pg.31).** Here you have 77 members of the array who have followed the case in the media who have extensive knowledge of the case and as such including an alleged kidnapping of Petitioner's son ( a crime he was not on trial for), which futher exceberrated the coverage and the amount of times this coverage was repeated in a course of a year was astronomical. Therefore, even after trial court conducted vior dire, it is clear from the record that the trial court tried to rehabilitate the remainder of this poisoned panel. We must also bear in mind that the trial court was in a unique position of hearing the testimony of the potential jurors and gauging the **sincerity of** their responses in light of the publicity about the case. But the successful qualification of a jury

20.

**GROUND FIVE CONT:**

panel is not the sole criterion in determining whether a defendant is entitled to a change of venue, since concious or subconcious juror prejudice can effect answers obtained on vior dire. Although it was possible to select a jury whose members were not subject to a challenge for cause, Petitioner was entitiled to a change of venue if he could show that there were influences in the community which could affect the answers on vior dire. There are two things that distinguish this case from others in which a majority of the venire is familiar with the case. "first, the nature of the publicity is quite different because, Petitioner was a police officer, there was a Burglary, a Murder, Kidnapping, an Amber Alert went out, there was a SWAT-standoff/ Hostage situation, News Stations reported widely and did extensive coverage on the day and fora year after until the date of trial, potential jurors had the oppertuinty to watch it unfold. Second, a large number of potential jurors could not set aside their opinion. This strongly indicates that pretrial publicity resulted in actual identifiable prejudice to petitioner." Also the media coverage was not accurate and objective, because it reported an actual kidnapp when there was none. Because Petitioner's attorney not filing the motion for change of venue, it rendered him deficient in his performance and because of the ommission it is a probability that the outcome of said trial would have been different. It must be remembered that the trial judge ordered a gag order on the case. See, (CR.pg.30). Here we have the acts and ommissions of said attorney, who effectively abandoned his client. Given the two prongs of **Strickland**, said deficient performance, coupled with the extreme prejudice that Petitioner was tried in a hostile enviroment, under media bias, Petitioner's attorney should have moved for change of venue. Wherefore, said counsels deficient performance resulted in Petitioner not recieving a fair and impartial trial, based on jurors being biased. For said procedural default appearing in the record, said cause should be reversed and remanded and said counsels should be sanctioned for thier derilict performances.


**GROUND SIX:**

TRIAL JUDGE ABUSED HER DISCRETION BY NOT ORDERING
CHANGE OF VENUE AFTER IT BECAME IMPOSSIBLE TO
SEAT A JURY THAT WAS UNBIASED IN HIGH PROFILE CASE.

In change of venue cases art.31.01 the judge should filed upon her own

21.

motion to change venue after the vior dire revealed that Petitioner could not recieve a and impartial trial. Because the jury that was actually seated was tainted by the rest of the jury pool, along with the fact that this case was tried in the media way before the actual jury was pooled. Because the **Sixth Amendment** gives the Petitioner the right to a fair and impartial trial it is the presiding judge who conducts the vior dire of the prospective jurors, that said motion by court should have been rendered. Because the judge sees and hears the answers to the questions promulgated by attorneys, as well as her individual vior dire of prospective jurors. It was impossible to seat a jury in this high pro-file, media driven trial. Trial judge abused her discretion in Capital Murder trial was prjudicial and imflammatory, and thus change of venue was warranted after a large number of venire panelist were disqualified for cause because they were unable to set aside their opinions of defen-dant's guilt. See, (RR. Vol.2,pg.30,9,22, pg.31,13-25). These circumstances required a conclusion by the trial judge that publicity was inflammatory and prejudicial, and media broadcasts and newspaper reports of the case were not objective in their coverage, along with internet blogs, coupled with defense attorney telling venire panelist that Petitioner was guilty, not only infringed on Petitioner's persumption of innocence, but denied Petitioner his **Sixth Amendment right** to be tried by a fair and impartial jury. Such actions tainted the jury to such an extent that Petitioner could not recieve a fair trial. See, **14th Amend. U.S. Const. Also, V.T.C.-C.P. art.31.03(a), Mayola v. Alabama,** 623 F.2d 992, 998 (5th Cir.1980), **Von Byrd v. State,** 569 S.W.2d 883, 890-891, **Russel v. State,** 146 S.W.3d 705, 714 (Tex.App.-Texarkana 2004, pet.ref'd), **Crawford v. State,** 685 S.W.2d 343, 349-350. The number of jurors that were unable to serve on the jury in this case demonstrates the extent of the pretrial publicity had permeated the community. Here out of 100 a large percentage more than ½ could not be impartial and already formed their opinion. See, (RR. Vol. 2,pg.31,22-25.). These panelist could not but aside their opinions is reason enough to consider the entire community "infected" by the pre-trial publicity and prejudice, and inflammatory atmosphere and those act-ually seated were poisioned by the others. For this reason said cause should be reversed and remanded, and said former trial judge should be taken on vior dire as for her acts and ommissions.

22.

GROUND SEVEN:

## INEFFECTIVE ASSISTANCE OF COUNSEL FOR ABANDONING PETITIONER AND ACTED AS NO COUNSEL AT ALL, ACTING AS MERE FREIND OF COURT.

Said counsel abandoned his client and acted as no counsel at all, only mere friend of court. In the totality of representation by defense counsels, Mr. Mark Woerner, Mr. Steve Schiwetz, and Mr. Mark A. Gonzales, abandoned their client. Mr. woerner at the onset of trial was not concerned about Petitioner being shackled, nor did any of the defense attorneys complain, nor object. Furthermore, Mr. M. Woerner told the jury that his Client was guilty, which nullified any any defense, in regard to Count II, and resulted in the jury being biased. A strategy that petitioner did not approve of nor was able to communicate his disbelief to attorneys about such remaks that infringed upon his persumption of innocence.

**Ineffective Assistance of Counsel:**

The Supreme Court has long "recognized that 'the right to counsel is the right to effective assistance of counsel'" under the **Sixth Amendment. Strickland v. Washington,** 466 U.S. 688, 104 S.Ct. 2052, 2063, 80 L.Ed.2d. 674 (1984); In this case, we find that the defense counsel did not put up any meaningful defense during the punishment phase, nor file pretrial motion that Petitioner wasnever convicted of any felony in this State or any other State, See **V.T.C.C.P. art.42.12, Sec.4(d)(8)(c) states:** A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a sworn motion to the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury enter in the verdict a finding that the information is true. See **(RR.Vol.2,pgs.9, 1-17).** Because of the forceful argument by the State's attorney Mr. McCaig that Petitoner was not eligible for probation, Petitioner's attorney should have researched further in the same code to ascertain that Petitioner was eligible for pro-bation/community supervision. If counsel would have filed the pre-requisite motion with the trial judge. Furthermore, said counsel did not reasonably argue on his client's behalf during punishment phase. See, **(Vol. 5.pg.126,3).**

Line 4: The Court: Okay.

Line 5: does the defense have any additional evidence for pupuses of punishment?

Line 6: Mr. Woerner: No, your Honor.

Line 7: The Court: All right. Argument?

Line 8: Ms. Dorsey: Judge, the State is going to ask for life on that Count, too.

23.

GROUND SEVEN CONT:

Line 10: Mr. Woerner: Your Honor, we're just
Line 11: going to simply ask the Court to consider a lesser
Line 12: sentence, based on all the facts and circumstances in
Line 13: this case. That's all I have, Your Honor.

Said counsel's performance was so deficient through counsel's disenchantment that he totally abandoned his client. Petitioner's second count was a sentence range 5-99 or life. Because Petitioner was never convicted of a crime nor was there mitigating factors that constituted a life sentence. Counsel did not present any evidence of future dangerousness, nor whether rehabilitation would help his client such ommissions rendered counsel's performance deficient and prejudiced the outcome of the trial. Because the court did not consider the full range of punishment based on counsel's deficient performance. Because counsel did not present any mitigating factors in rebuttal to the State's recommendation of a life sentence, there was a reasonable probability that the outcome would have been different. This is the purposes of serverance for filing such a motion , so that the Petitioner would not be overwhelmed by the count I. For this reason the State had gained a tactical advantage over Petitioner, and count II was overwhelmed by count I. See, **Osborn v. Schillinger, 861 F.2d at 626-627**. The Court in **Strickland** adopted a two-prong test to help lower courts determine when errors in legal decision-making alone effectively render the guilt determination process nonadversarial. Whether the attorney fufilled his duty to make reasonable investigation was not necessary. **Id. at 691, 104 S.Ct. at 2066.** We defined reasonaleness standard as "the 'excercise [of] the skill, judgment and diligence of a reasonable competent defense attorney.'" **Burney, 756 F.2d at 790 (quoting Dyer v. Crisp, 613 F.2d 275, 278 (10th Cir.)(enbanc), cert.denied, 455 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 770 (1980)).** A reasonable probability is a probability that absent, the errors, the sentencer-including appellate court, to the extent that it independently reweighs the evidence-would have concluded the balance of the aggravating factors and mitigating circumstances would have resulted in a life sentence on count two. Now the additional question is; could this also be applied to count one in relation to **V.A.C.C.P. art.42.12(8)(c)?** wherefore said counsel should have filed pretrial motion and affidavit that his client was never convicted of a felony in this state or other. Because of the acts and ommissions of counsel, such ommission counsel breached his loyalty to his client. Defense counsel completely failed to investigate other lines of pluasible defense and was inadequately prepared to effectively present the tactical defense he chose. "[I]n a capital case the attorney's duty to investigate

24.

GROUND SEVEN CONT:

all possible lines of defense is strictly observed." **Coleman**, 802 **F.2d** at 1233; cf. **Burger**, 107 **S.Ct.** at 3126(less than complete investigation justifiable only "to the extent that reasonable professional judgments support the limitations on investigations")(qouting **Strickland**, 466 **U.S.** at 690-91, 104 **S.Ct.** at 2066)). Counsel's responsibility was to argue the sentencing question, he did little in preperation. See **Osborn, F.Supp.** at 616-617. "It should be beyound cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonable effective assistance of counsel by an objective standard of reasonableness." **Blake v. Kemp**, 758 **F.2d** 523, 533 (11th Cir.1985), cert.denied, 474 **U.S.** 998, 106 S.Ct. 374, 88 **L.Ed.2d** 367 (1985). Here counsel failed to defendant being shackled, failed to investigate the extensive media coverage, television documentrary which featured Petitioner in family violence. failed to bring forth witnesses' from the media outlets and internet blogs who gave commentaries on case. Failed to to adequately prepare a defense, nor subject the state's case to the adversarial testing process by having fellow police officers who were having illicit relations with his wife there to testify. Nor did he interveiw them nor have them appear before the court, officers, Buzz Esparza, Luis rene Ozuna, Noe Roel, Emede Reyes, and Frank Estrada. Defense attorney did produce phone records, see(**Petitoner's appeal brief Exhibit 14-16**). That was the extent of defense preparation for capital murder trial. Counsel did not include any investigation of these individuals who was having illict affairs with deceased. Although court ordered physcological testing of the Petitioner, there was no report by the physcologist included in the record, nor was he called to testify to Petitioner's mental condition at the time of offense. These were just some of the failures of defense counsel in prepartion for trial. Once counsel telling jury that his client was guilty of murder, he was wholly unprepared to make a platable defense of his theory and effectively undermined Petitioner's persumption of innocence in Count I and Count II. said was no defense at all but a tactical retreat, and pure abandonment of his client. Even granting deference to counsel's choices, we cannot conclude that he need not undertake further investigation," before proceeding with an argument he was wholly unprepared to make. **Burger**, 107 **S.Ct.** at 3126. Counsels performances did not meet constitutional standards. In addition, the Court should find clearly established that Petitioner's attorneys so abandoned their "overarching duty to advocate the defendant's cause, **Strickland**, 466 **U.S.** 688, 104 **S.Ct.** at 2064, that the state proceedings were almost totally nonadversarial. Informing the jury panelist that his client was guilty

25.

## GROUND SEVEN CONT:

permeated that guilt thru both counts and destroyed any persuption of innocence. counsel's actions in regard to sentencing even more clearly indicate the abandonment of his duty of loyalty. **Nix v. Whiteside, 475 U.S. 157, 106 Ct. 988, 1006, 89 L.Ed.2d 123, (1986)(Blackman, J., concurring in judgment)**("except in the rarest of cases, attorneys who 'adopt the role of judge or jury to determine the facts,' pose a danger of depriving their clients of the zealous and loyal advocacy required by the **Sixth Amend.**") (qouting **United States ex rel. Wilcox v. Johnson, 555 F.2d 115, 112 (3d Cir. 1977) (citation omitted)**). The most striking indication of counsel's performance and failure to fufill his duty of loyalty to his client is from his behavior at the trial itself. "Counsel at the summation of the trial, counsel referred to the difficulty his client had presented to him. See **(RR. Vol.5.pg.99)**:

Mr. Woerner: May it please the court, Counsel for the State, ladies and gentlemen of the jury. Now, this kind of an interesting case for me. I've been doing this for over 30 years. I've probably tried over way more than 30 felony cases. I've probably tried over a dozen murder cases. And I've never found myself in

**(RR.Vol.5,pg.100,1-3,12-20)**:

front of a jury telling them that my client is guilty of murder. That's never happened. I guess it's because we have sort of a unique set of facts and circumstances. Now, why did this happen? why would someone who is a respected member of his community, a hardworking , law-abiding, law-enforcing individual commit this terrible act? why would he murder his wife an destroy his family? I'm not sure that can totally be answered. sometimes people snap. Something sets them off and thay do something totally out of character for them. Because, really, there was obiviously nothing good that was going to come out of this.

Counsel is in fact telling the jury he could not present any mitigating circumstances when evidence against his client is so overwhelming. In closing counsel lamented; **(RR.Vol.5,pg.102,13-16)**: If you commit a homocide under these circumstances, no matter what your reason is you're guility of murder. So Joey is not walking out out of here today no matter what.

Petitioner's attorney did not simply make poor choices; he acted with reckless disregard regard for his client's case.

GROUND SEVEN CONT:

Whatever the reason the record supports that counsel turned against his client. There is no apperrant reason for counsels behavior, altough he repeated many times that his client was guilty and how difficult this case was. This conflict in loyalty unquestionably affected his representation. A defense attorney who abandons his duty of loyalty to his client and effectively helps the State in an effort to attain a conviction suffers from an obivious conflict of interest. such an attorney, like unwanted counsel, "'represents' the defendant only through a legal fiction." Faretta V. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). In fact an attorney is burdened by a conflict between his client's interest and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant and the state are necessarily in oppostion. As the Supreme Court has asserted: "The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing... [i]f the process loses its character as confrontation between adversaries, the constitutional guarantee is violated." Cronic, 466 U.S. at 656-57, 104 S.Ct. at 2045. It is the Petitioner's conclusion that his counsels of record did provide him with effective assistance of counsel. The performance of counsels was constitutionally unresonable, more importantly, the evidence presented at punishment hearing overwhemingly established that his attorney abandoned the required duty of loyalty to his client. Petitioner's attorneys did not just simply make poor choices; he acted with reckless disregard for his client's best interests and, at times, apparently with intention to weaken his client's case. It must be remebred that Petitioner was never convicted of a crime or any felony and was eligible for probation, also for purposes of Count II, there was no argument by counsel on his client's behalf. Trier of fact abused her discretion and was biased in her sentencing of Petitioner. Petitioner's counsel advising his client to let the judge sentence him in regard to Count II was designed to facilitate another life sentence without counsel having to argue before the jury. See, (CR.pg.146.) Because of the Amended Election for Punishment Motion filed was filed on the date of conviction, further proves that counsel abandoned his client and sided with the State, against his client. Petitioner urges the Court that reversable error has appeared in the record and such cause should be reversed and remanded.

27.

GROUND EIGHT:

PETITIONER'S COUNSEL OF RECORD FOR DIRECT APPEAL FRED JIMINEZ AND
STEPHEN W. BYRNE WAS INEFFECTIVE ASSISTANCE OF COUNSEL AND COMMITTED
FRUAD BEFORE THE COURT BY FILING FRIVOLOUS BRIEFS, FOR SUCH ACTIONS[
WERE MOTIVATED BY POLITICAL ASPIRATIONS AND THE HIGH PROFILE NATURE
OF THE CASE. FORCING INDIGENT PETITIONER WHO IS NOT EDUCATED IN THE
LAW TO FILE PRO/SE BRIEF.

Prejudice, whether necessary or not, is established under any applicable
standard. Petitioner was charged with several crimes, the State assigned
counsel Fred Jiminez to represent him in his direct state review of
convictions. Fred Jiminez's wife was the District Attorney for Nueces
County, (Anna Jiminez) whose office prosecuted the Petitioner. Because
of the conflict of interest and the high profile nature of the case,
said attorney filed a frivolous brief, knowing well that Petitioner's
case was filled with meritorious claims. Such insidivious intent by said
attorney because of the high profile nature of the cause, and the political
aspirations of Fred Jiminez and his wife Anna Jiminez, who is now imbat-
tled with the State over corruption charges while she was in office. If
said attorney would have brought his legal skills and knowledge to bear,
Petitoner would succeed in a successful review of his direct appeal.
Any attorney from the county who have any political aspirations along with
their spouses' would be faced this type of case hanging over their head.
The motivation factor in a pro-conviction enviroment, who appear to be
soft on crime, would be the object of political ostrcism. The Court in turn
appointed Stephen W. Byrne to represent Petitioner on direct appeal. said
counsel filed motion to withdraw citing ill-health in which he claims
when the court appointed him to represent Petitioner. He still filed a
frivilous brief. Such actions by counselors forcing Petitioner who is
uneducated in the law and the speciality of appellate review to have no
choice but to a pro/se brief. The court was not satisfied with the brief
that Fred Jiminez filed. Because the actions of these attorney's does
not subject the state's case to the adversarial process. "The right to
effective assistance of counsel is the right of the accused to require
the prosecution's case to survive the crucible of meaningful adversarial
testing... [I]f the process losses its character as a confrontation be-
tween adversaries, the constitutional guarantee is violated." **Cronic,**
**466 U.S.** at 656 -57, 104 S.Ct. at 2045. Petitioner bases his conclusions
that he did not recieve effective assistance of counsel on the clear
evidence in the proceeding grounds postulated in grounds one -seven.

28.

## GROUND EIGHT CONT:

this is the evil intent of attorneys to circuvent their client's basic and fundamental rights as embodied in the **Sixth Amend.** Moreover, the purpose of the effective assistance of counsel guarantee of the **Sixth Amend.** is to insure that defendants are represented by counsel and not have to face the lybrinth of the criminal justice system unawares. Judicial scrutiny of counsel's performance must be highly defferential. The Court must determine in light of all circumstances, the identified acts and ommissions were outside of the wide range of professional competent assistance. In making that determination, the Court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. The Court relies on the legal profession's maintenance of standards sufficient to justify the law's persumption that counsel will fufill the role of in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an advocate on behalf of his client as opposed to amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. that request must be accompanied by a briefing referring to anything in the record that might arguably support the appeal. Stephen W. Byrne did not provide this. Petitioner urges the Court that because the record was fully developed Petitioner should be allowed to proceed with ineffective assistance of counsel claims as promulgated by the opinion in **Trevino v. Thaler**, 569 **U.S.**_(2013)(citation ommitted). Because of conflicts of interest ((See Exhibit "D" appellate Brief), and attorneys abandoning Petitioner there is a probability that the outcome of appeal would have been different. After a full examination of all proceedings, to decide whether the case is wholly frivolous. It so finds it may grant grant counsel's motion to withdraw. Petitioner contends that there is no way possible for the court to hear the case on 13 of August, then render an opinion based on Fred Jiminez's brief on the 14 of August the very next day, when Stephen W. Byrne was appointed by the court. Such opinion is without any merit and does not reach to adjudication on the merits.

29.

GROUND EIGHT CONT:

It must, prior to to decision, afford the indigent the assistance of counsel to argue the appeal. 13th Court of appeals denied oral argument. See, **Anders v. California**, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396 (167). Also See, **Douglas v. California**, 372 U.S. 353, 83 S.Ct. 814, L.Ed. 2d 811 (1963). Because Petitioner has requested oral argument, and the issues are complexed, Petitioner needs counsel appointed just for oral argument of the merits on the issues. Furthermore, the Court in **Strickland** draws a distinction between "actual or constructive denial of assistance of counsel altogether," and denial through "actual ineffectiveness." The difference is between not having a lawyer at all (or having one that the State has disabled insignificant way), and having one that is free to provide assistance of counsel but fails to do so. because of the manichiations of the attorneys on direct appeal and the boilerplate opinion of the court delivered on the following day after required submission, coupled with the State's brief that concedes Petitioner's claim of double jeopardy appeared from the record. Petitioner should have been afforded the full play of ineffective assistance of counsel, taking said attorney's on Vior Dire, Affidavits etc. Petitioner, urges the Court to reverse said cause and remand with instructions, as well as grant oral argument in said cause.

GROUND NINE:
PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
FOR NOT RAISING AN AFFIRMATIVE DEFENSE OF TEMPORARY INSANITY,
AFTER ATTORNEY MADE QUESTION REGARDING PETITIONER'S MENTAL
STATE AT THE TIME OF THE OFFENSE.

Criminal Law Keynote-773:
If evidence from any source raises the issue of insanity, the trial court must include an instruction on insanity defense in jury charge. **V.A.C.C.P.** art.46.03; **V.T.C.A.**, Penal Code § 8.01.

Criminal Law Keynote-493:
When considered with the facts and circumstances concerning an accused and the defense, lay opinion testimony may be sufficient to raise the defense of insanity. **V.T.C.A.**, Penal Code §8.01. During the trial on the merits, Petitioner's counsel raised the issue of Petitioner's mental state that lead up to the commission of the offense. See, (RR.Vol.5,pg.99,pg.100, 1-20):

25. I've never fouund myself in
pg.100;

30.

GROUND NINE CONT:

front of a jury telling them that my client is guilty of murder. that's never happened. I guess it's because we have a sort of unique set of circumstacnes.

Now the State has basically been telling You, look, I want you to ignore everything that led up to this ignore all the facts and circumstances don't consider them because they're not relevant what the State forgets that intent is an element. It's right there in your charge. And when you're determining whether somebody did something intentionally, you have to look at why did it happen.

Now, why did this happen? Why would someone who is a respected member of his community, a hard-working, law-abiding, law-enforcing individual commit this terrible act? Why would he murder his wife and destroy his family? I'm not sure that can totally be answered. Sometimes people snap. something set them off and they do something totally out of character for them, because, really there was obviously nothing good that was going to come of out of this.

The above colloquy by Petitioner's counsel demonstrates that the counsel was of the opinion "that his client snapped." Which is an off-color remark of insanity. Such reasons promoting petitioner's guilt destroyed his persumption of innocence and rendered the jury incapable of reaching a fair and impartial decision. Furthermore counsel abandoned his client's defense of insanity. The **Sixth Amend.** requirement of effective assistance counsel reasonably likely to render reasonable effective assistance. It is a violation of that standard for defense counsel to deprive a criminal defendant of a substantial defense by his own incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undefelcted by conflicting considerations. Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. It is a denial of the right to effective assistance of counsel for an attorney to advise his client errorneously on a clear point of law if that advice leads to a deprivation of his client's right to a fair trial. Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if other action would have better protected a

31.

**GROUND NINE CONT:**

a defendant and was reasonably foreseeable as such before trial. If, however, action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective. Harmless error tests do not apply in regard to the deprivation of a procedural right so fundamentally as the effective assistance of counsel. Petitioner's attorney filed motion for psychological evaluation which was granted by the court. See, (CR.pg.48). It appears from the record that defense counsel was headed towards this defense, then abandoned this defense. Knowing that his client was a former Border Patrol Agent, suffering from Post Traumatic Stress Syndrome from this assigment, as well, as his job as an Alice Police Officer, which greatly effected his physcological well being coupled with the fact that Petitioner's wife was having multiple affairs with fellow co-workers who were Police Officers. Also, amount of stress that police offers experience on a day to day level, such amount of stress of officers' on a national level is well documented, and the amount of domestic violence involving police officers' and members of the armed forces is well documented. Petitioner's attorney was derilict in his duty for not preparing the case for this type of defense. There was no psychological reports tendered as defense exhibits from any of the law enforcement agencys Petitioner was deployed with. So, if by moral insanity it be understood only a disorder or perverted state of affections or moral powers of the mind, it cannot be too soon discarded as affording any sheild from punishment for crime: if it can be truly said that one who indulges in violent emotions, such as remorse, anger, shame, grief , and the like is afflicted with homocidal insanity, it will be difficult, yes, impossible, to say where sanity ends, and insanity begins...We say to you, as a result of our reflections on this branch of the subject, that if the prisoner was actuated by an irresistible inclination to kill, and was unable to control or subjugate his intellect... he is entitled to an acquittal. (**Mr. Justice Paxson, 88 PA. 291, Jan. 20,1879**). What then is that form of disease, Denominted Homocidal Mania, which will excuse one for having committed a murder? Cheif justice Gipson calls it that unseen ligament pressing on the mind and drawing it to consequences which it under coercion which, while its results are clearly percieved, is incapable of resistance-an invisible inclination to kill.

**Criminal Law Keynote-773(1):**
**Tex.** app.-Houston[14th Dist.]2001. If evidence from any source raises the

GROUND NINE CONT:

issues of insanity, the trial court must include an instruction on insanity defense in the jury charge. **V.A.T.C.C.P. art..46.03; Penal Code §** 8.01, **Nutter v. State, 93 S.W. 3d 130.**

Criminal Law Keynote-493:

When considering with facts and circumstances concerning an accused and the offense, lay opinion testimony may be sufficient to raise the defense of insanity. **V.T.C.A., Penal Code § 8.01.**

The affirmative defense of insanity applies if "at the time of the conduct charged, the actor, as a result of severe mental diease or defect, did not know his conduct was wrong." defense counsel made an Ex parte request for Petitioner to be examined as to his state of mind. When such an evaluation has been performed pursuant to court order, a written report of the examination must be submitted to the court and copies of the report must be furnished to the defense counsel and prosecuting attorney. **V.T.C.C.P. art.** 46.02 § 3(d)(Verono's Supp.1998). No report of this examination has been included in the record, so we are unable to determine how any such report may have influenced counsel's decision. However, since the record shows that Petitioner's attorney did file a motion for evaluation, and did bring up Petitioner's mental state, that he was considering this defense, and abandoning such defense after telling jury that his client snapped, was a clear comment on the mental state of the Petition. See, (RR.Vol.5,pg.100, 1-20). Petitioner concludes that this constitutes evidence from any source, and raises the issue of insanity no matter how remote.

Criminal Law Keynote-641.13(7):

Ineffective assitance of counsel at punishment stage is not governed by the the **Strickland standard**, but by the **Duffy standard** which requires that the Court determine first, whether counsel was reasonaly likely to render effective assistance, second, whether counsel reasonably rendered effective assistance. **U.S.C.A. Const. Amend. 6.**

Criminal Law Keynote-641.13(7):

**Duffy standard** for evaluating a claim of ineffective assistance of counsel at punishment stage of trial requires a showing of harm due to the ineffective assistance. **U.S.C.A. Const. Amend. 6.**

It was error for trial counsel not request an instruction at punishment of trial due to insanity, but, furthermore, Petitoner's attorney and State's attorney Ms. Dorsey put the court charge together, so it was ineffective assistance of counsel that his attorney subjected his client to such eregrious harm both great and apperant. **Ex parte Duffy, 607 S.W.2d 507 (Tex. Crim.App.1980).** This standard requires that the court evaluate a complaint of ineffective assistance at the punishment stage determinig

GROUND NINE CONT:

first, whether counsel was reasonably likely to render ineffective assistance of counsel, and second, whether counsel reasonably rendered ineffective assistance. **Cardenas v. State, 960 S.W.2d 941, 947 (Tex.Crim. App.-Texarkana 1998, no.pet).** This standard also requires a showing of harm due to the ineffective assistance. **Stone v. State, 751 S.W.2d 579, 582 (Tex.App.-Houston[1st. Dist] 1988,pet.ref'd).** 742 S.W.2d at16, Penal Code § 8.04. Petitioner's claim of ineffectiveness prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on having produced a just result." Petitioner claim does not stand alone, the record is replete with the litanies of the grave and fatal errors committed by counsel in this case. These errors judged by the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on the proceedings is inadequate. **Strickland, 466 U.S. at 693, 104 S.Ct. at 2067-68; McFarland v. State, 928 S.W.2d 482 (Tex.Crim.App.1996).** In this cause the errors had a profound effect on the proceedings. Petitoner urges the court to reverse said case and remand with instructions, reversible errors appearing in the record.

GROUND TEN:

PROSECUTORIAL MISCONDUCT: ASSISTANT DISTRICT ATTORNEY COMMITTED PROSECUTORIAL MISCONDUCT WHEN QUESTIONING OFFICER ON THE STAND ABOUT THE CHARGE THAT RELIES ON A LEGAL CONCLUSION THAT THE JURY DECIDES FOR ITSELF.

The following questions was promulgated by Ms. Dorsey: (RR.Vol. 4,pg.131, 8-21):

and if he shots and kills somebody during

the course of that--

Mr. Woerner: your Honor, we're going to

object to any legal conclusions being drawn here.

Ms. Dorsey: I'am asking this officer what

he would charge and arrest someone for.

The witness: Capital Offense.

The Court: hold on, hold on. I am going

sustain the objection because it in your hypothetical it

goes to the issue that this jury needs to determine.

Mr. Woerner: we'd ask the jury to

instructed to disregard.

the Court: The jury will disregard the

officer's last answer to the question.

**GROUND TEN CONT:**

This was a direct comment on the exact nature of the charge the jury determines for itself. the prejudice that incurred from the prosecutor's soliciting such question was designed to undermine the legal conclusion from fact to ultimate fact, that this could have been rendered an non-capital case. The prosecutor subplanted in the minds of the jury that this is a capital case, and such injury infringes on on Petitioner's due Process safeguards as afforded by the **14th and 6th Amends. U.S. Const.** Wherefore such responses elicited by the prosecutor was designed to impermissibly shift the burden of proof, and such cure by the court did not cure the substantial harm but, instead rendered the trial process unfair

and unreliable resulting in the jury being tainted. Petitoner contends that his conviction should be reversed because of prosecutorial misconduct. A criminal defendant bears a substantial burden when attemping to show prosecutorial improprieties constitutes reversible error. **United States, v. Diaz-Carreon,** 915 F.2d 951, 956 (5th Cir.1990). Improper prosecutorial comments require reversal only if the comments substantially affected the defendants right to a fair trial. In evaluating any effect on the right to a fair trial, consider three factors: the magnitude of the prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of defendant's guilt. The misconduct complained of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of defendant's guilt. The misconduct complained of must be examined in the context of the trial in which it occured . See, **United States v. Willis,** 6 F.3d 257, **264 (5th Cir.1993).** After careful review of the conduct complained of, it is apperrant because of the divergent theories, the question by the prosecutor was designed to draw out a legal conclusion from the officer that the jury was decide an evaluate for themselves. Such overwhelming prosecutorial misconduct was not cured by instruction from the court. And such impermissbly shifted the burden of proof to the Petitioner. Taken the trial as a whole, after defense attorney already planted in the jury's mind that his client was guilty, which took away Petitioner's persumption of innocence. Petitioner concludes that the prosecutor's question coupled with all the litanies of the trial attorney cast "serious doubt" upon the correctness of the jury verdict and the fairness of the trial. Petitioner urges the court, that reversible error has appeared in the record and such cause should be reversed and remanded.

35.

## GROUND ELEVEN:

### TRIAL JUDGE ABUSED HER DISCRETION BY NOT ISSUING INSTRUCTIONS TO CURE AFTER STATE'S WITNESS TESTIFIED TO PREJUDICIAL EXTRANEOUS EVENT THAT WAS RELATED TO THE INSTANT OFFENSE:

During the testimony of Diana Rodriguez the victims mother, Ms. Rodriguez testified: See, (RR.Vol.3,pg.212,16-24:

Q. Okay. Did Leslie ask you to leave?

A. Leslie said she was going to stay, and that's when the police officer escorted me to my car because I started getting angry and I started telling him-- because Joey was saying that Leslie was cheating. I said, okay, now, why didn't you tell me all the things that you did to her? why didn't you tell me what your dad did to Amber? I started getting angry and that's the police--

Mr. Woerner: your Honor, I am going to

(RR.Vol.3,pg213):

make an objection at this point. May we approach?

The Court: Yes.

(Bench conference.)

The court had ruled on a motion in limine to not allow any of the State's witnesses' to infer or mention the alleged allegations concrning petitioner's step-daughter and his father who shares the same name as Petitioner. By State's witness violating that order and said trial judge Angelica Hernandez not issuing instruction for cure, said violation further tainted the minds of the jury who were already tainted by trial attorney's actions and ommissions on persumption of innocence. Such blurting out by the State's witness was calculated by said witness, after already being instructed by by State's attorney not to mention of the above stated allegations. Said blurting out by the State's witness was calculated by said witness, after alrady being instructed not to mention it in the presence of the jury. Such prejudice outweighed the probative vaule, insomuch, that nonruling by the court allowed the Petitioner to be further prejudiced by said violation. Motion in limine is to prevent admission of, irrelevent, inadmissible or prejudicial evidence into trial, but it is not a final ruling on the evidence. See, **Valencia v. State, 891 S.W.2d 652, Petition for Discretionary Review granted, Vacated, 946 S.W.2d 81, on remand 966 S.W.2d 188 PDR ref'd.** Said prejudice from inference to Petitioner's father

36.

was calculated to inflame the minds of the jury as to child abuse allegations of a sexual nature.

**Pretrial Procedure Keynote-3:**

The purpose of a motion in limine is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. **Ball v. Rao, 48 S.W.3d 322, rehaering overruled, and review denied.** The imposition of sanctions for violation of orders in limine is left to the sound discretion of the court, and the court of appeals will not reverse such sanctions absent a clear abuse of discretion. **Ball v. Rao, 48 S.W.3d 322.** Repeated violations of limine orders may result in mistrials or reversals. **Ball, supra.,** Said witness for the State, acted in flagrant bad faith and callous disregard for trial court's order. **U.S.C.A. Const. Amend. 14th, Lassiter v. Shavor, 824 S.W.2d 667.** It was imperative that the trial court poll the jury as to what they had gleaned from such statement by witness. Because of the lack of questioning and no cure by the court, Petitioner believes' that the court abused its discretion for not issuing curative instructions to disregard. Because the record is silent on this matter, it is assumed by the Petitioner that the jury was further tainted by such violation, coupled with the litany of failures by his attorneys' to not request curative instructions, not have a running objection, and requesting a mistrial. Petitioner's counsel only appeared as a mere friend of the court, and aquicence to the State's violation, as well as abuse of discretion by the trial court. Taken as a whole the compounded errors of the case, Petitioner urges the Court to reverse and remand said conviction, for prejudice has appeared in the record and Petitioner did not recieve a fair and impartial trial.

## CONCLUSION

Petitioner would urge the Court that he falls under the narrow ruling of **Treviino v. Thaler,** wherein the record was full developed and the errors of his attorneys were plain and apperrant. When Attorneys' operated in such an insidious fashion; Hear no evil, see no evil, and speak no evil! Said trial was overwhelmed by medai and public pressure, which resulted in the impossibility to seat a fair and impartial jury. Petitioner was forced to wear leg shackles during the entire trial, with no demonstrative reasons by the trial judge. Counsel rendered ineffective assistance on numerous occassins, destroying Petitioner's persumption of innocence.

## CONCLUSION CONT:

The Court is well settled that when a jury is seated and the atmosphere is set in motion to insure that Petitioner would not recieve a fair trial, he is entitled to at least a hearing on change of venue, on his attorney's motion, or in leiu from the trial court. Because there was neither, the court should have taken upon her self such change of venue. When the trial was dominated by the media and public pressure. Furthermore, double jeopardy was committed when Petitioner was prosecute for more than one burglarious entry, wherein there was only one unlawful entry. Said prosecution commenced upon an unsigned affidavit and information, wherein said attorney failed to take notice of. Wherein the State was without jurisdiction to proceed upon. Petitioner's counsel frivolous brief, was intentional because of nepotism, and high profile nature of the case, Such actions by trial attorney's to insure that Peititoner was convicted, and appeallate attorneys' to circumvent any meaningful appellate review and force Petitioner to prosecute his own appeal without any formal legal training, was calculated to injure the rights of Petitioner. Such actions are denounced in both the State and Federal Constitution. because petitioner could not communicate with his attorney during course of trial, attorney put on a defense that was inconsistant with his original strategy, than abandoned the temporary insanity defense, thereby abandoning his client and went on to become a friend of the court, and infact was in reality giving testimony for the State when he testified that his client was guilty, and that guilt was inferred thorough Count II. Also, abandoned his client during punishment stage of the trial. Because of the litanies of errors from the bench, as well as the attorneys in this case, the PDR should be granted, and the trial judge as well as the attornys should be taken on vior dire, for their acts and ommissions. Petitioner, urges the Court to appoint attorney for oral argument in said case. Also, reverse and remand the case with instructions for acquittal in regard to the double jeopardy claims.

## PRAYER

Petitioner prays that the Court grant him all requested herein, and any and all relief that the Court deems just and necessary that justice will allow.

## CERTIFICATE OF SERVICE

Petitoner certifies under penalty of perjury that a true and correct copy of this Petition for Discretionary Review was delivered by hand to the Nueces County District Attorney, the Hon. Mark Shukra 4/ /15. At the Nueces County Courthouse, 901 Leopard St. Corpus Christi, Texas 78401. Also to Atty General PO Box 12405, Austin Texas 78711.

Signed this 4/13/15

Respectfully submitted,

By: _____

Pro/se:

Jose Gonzales III #1832029

James V. Allred Unit

2101 FM 369 N.

Iowa Park, Texas 76367

APPENDIX

CHIEF JUSTICE
  ROGELIO VALDEZ

JUSTICES
  NELDA V. RODRIGUEZ
  DORI CONTRERAS GARZA
  GINA M. BENAVIDES
  GREGORY T. PERKES
  NORA L. LONGORIA

CLERK
  DORIAN E. RAMIREZ



# Court of Appeals

## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

August 14, 2014

Hon. Adolfo Aguilo Jr.
Assistant District Attorney
Nueces County Courthouse
901 Leopard - Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Hon. Mark Skurka
District Attorney
901 Leopard Street, Room 205
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Hon. Fred Jimenez
Attorney At Law
509 Lawrence, Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Mr. Jose Gonzales III
TDCJ #1832029
James V. Allred Unit
2101 FM 369 North
Iowa Park, TX 76367

Re:      Cause No. 13-13-00011-CR
Tr.Ct.No. 11-CR-4141-D
Style:   JOSE GONZALES III v. THE STATE OF TEXAS

Enclosed please find the opinion and judgment issued by the Court on this date.

Very truly yours,

Dorian E. Ramirez, Clerk

DER:dsr
Enc.
cc:    State Prosecuting Attorney (DELIVERED VIA E-MAIL)
       105th District Court (DELIVERED VIA E-MAIL)
       Hon. Patsy Perez, District Clerk (DELIVERED VIA E-MAIL)
       Hon. J. Rolando Olvera Jr., Presiding Judge, 5th Administrative Judicial Region,
       (DELIVERED VIA E-MAIL)



# THE THIRTEENTH COURT OF APPEALS

## 13-13-00011-CR

JOSE GONZALES III
v.
THE STATE OF TEXAS

On Appeal from the
105th District Court of Nueces County, Texas
Trial Cause No. 11-CR-4141-D

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

August 14, 2014



# NUMBER 13-13-00011-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE GONZALES III,                                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                            **Appellee.**

### On appeal from the 105th District Court of
### Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Benavides**
**Memorandum Opinion by Justice Garza**

A jury found appellant Jose Gonzales III guilty of capital murder, a capital felony offense, *see* TEX. PENAL CODE ANN. § 19.03(a)(2), (b) (West, Westlaw through 2013 3d C.S.), and burglary of a habitation to commit a felony (aggravated assault), a first-degree felony offense. *See id.* § 30.02(a)(3), (d)(1) (West, Westlaw through 2013 3d C.S.). The trial court assessed appellant's punishment for the capital murder offense at life without

parole, *see id.* § 12.31(a)(2) (West, Westlaw through 2013 3d C.S.), and assessed punishment for the burglary of a habitation offense at life imprisonment, with the sentences ordered to run concurrently. Appellant's court-appointed counsel has filed an *Anders* brief. *See Anders v. California*, 386 U.S. 738, 744 (1967). We affirm.

## I. ANDERS BRIEF

Pursuant to *Anders v. California*, appellant's court-appointed appellate counsel has filed a brief and a motion to withdraw with this Court, stating that his review of the record yielded no grounds of error upon which an appeal can be predicated. *See id.* Counsel's brief meets the requirements of *Anders* as it presents a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See In re Schulman*, 252 S.W.3d 403, 407 n.9 (Tex. Crim. App. 2008) ("In Texas, an *Anders* brief need not specifically advance 'arguable' points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities.") (citing *Hawkins v. State*, 112 S.W.3d 340, 343–44 (Tex. App.—Corpus Christi 2003, no pet.)); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991).

In compliance with *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978) and *Kelly v. State*, PD-0702-13, 2014 WL 2865901, at *3 (Tex. Crim. App. June 25, 2014), appellant's counsel carefully discussed why, under controlling authority, there is no reversible error in the trial court's judgment. Counsel has informed this Court, in writing, that counsel has: (1) notified appellant that counsel has filed an *Anders* brief and a motion to withdraw; (2) provided the appellant with copies of both pleadings; and (3) informed the appellant of appellant's rights to file a pro se response, [1] and review the

---

[1] The Texas Court of Criminal Appeals has held that "the pro se response need not comply with the rules of appellate procedure in order to be considered. Rather, the response should identify for the court those issues which the indigent appellant believes the court should consider in deciding whether the

2

record preparatory to filing that response. *See Anders*, 386 U.S. at 744; *Kelly*, 2014 WL 2865901, at *3, *Stafford*, 813 S.W.2d at 510 n.3; *see also In re Schulman*, 252 S.W.3d at 409 n.23.

The record shows that appellant was provided a copy of the record on October 21, 2013. After this Court granted several motions for extension of time in which to file his pro se response, appellant filed his pro se response on May 23, 2014.

## II. INDEPENDENT REVIEW

Upon receiving an *Anders* brief, we must conduct a full examination of all the proceedings to determine whether the case is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). When an *Anders* brief and a subsequent pro se response are filed, a court of appeals reviews the entire record, and: (1) determines that the appeal is wholly frivolous and issues an opinion explaining that it finds no reversible error; or (2) determines that there are arguable grounds for appeal and remands the case to the trial court for appointment of new appellate counsel. *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005). If the court finds arguable grounds for appeal, it may not review those grounds until after new counsel has briefed those issues on appeal. *Id.*

We have reviewed the entire record, counsel's brief, and appellant's pro se response, and we have found nothing that would arguably support an appeal. *See id.* at 827–28 ("Due to the nature of *Anders* briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible error but found none, the court of appeals met the requirement of Texas Rule of Appellate Procedure 47.1.");

---

case presents any meritorious issues." *In re Schulman*, 252 S.W.3d 403, 409 n.23 (Tex. Crim. App. 2008) (quoting *Wilson v. State*, 955 S.W.2d 693, 696–97 (Tex. App.—Waco 1997, no pet.)).

*Stafford*, 813 S.W.2d at 509. There is no reversible error in the record. Accordingly, the judgment of the trial court is affirmed.

### III. MOTION TO WITHDRAW

In accordance with *Anders*, appellant's attorney has asked this Court for permission to withdraw as counsel for appellant. *See Anders*, 386 U.S. at 744; *see also In re Schulman*, 252 S.W.3d at 408 n.17 (citing *Jeffery v. State*, 903 S.W.2d 776, 779–80 (Tex. App.—Dallas 1995, no pet.) ("[I]f an attorney believes the appeal is frivolous, he must withdraw from representing the appellant. To withdraw from representation, the appointed attorney must file a motion to withdraw accompanied by a brief showing the appellate court that the appeal is frivolous.") (citations omitted)). We grant counsel's motion to withdraw. Within five days of the date of this Court's opinion, counsel is ordered to send a copy of this opinion and this Court's judgment to appellant and to advise him of his right to file a petition for discretionary review.[2] *See* TEX. R. APP. P. 48.4; *see also In re Schulman*, 252 S.W.3d at 412 n.35; *Ex parte Owens*, 206 S.W.3d 670, 673 (Tex. Crim. App. 2006).

DORI CONTRERAS GARZA,<br>
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of August, 2014.

---

[2] No substitute counsel will be appointed. Should appellant wish to seek further review of this case by the Texas Court of Criminal Appeals, he must either retain an attorney to file a petition for discretionary review or file a pro se petition for discretionary review. Any petition for discretionary review must be filed within thirty days from the date of either this opinion or the last timely motion for rehearing or timely motion for en banc reconsideration that was overruled by this Court. *See* TEX. R. APP. P. 68.2. Any petition for discretionary review must be filed with the clerk of the Court of Criminal Appeals, *see* TEX. R. APP. P. 68.3, and should comply with the requirements of Texas Rule of Appellate Procedure 68.4. *See* TEX. R. APP. P. 68.4.

**DELIVER BY 10:30 AM**

EAL

UNITED STATES
POSTAL SERVICE®

1007

U.S. POSTAGE
PAID
CORPUS CHRISTI,TX
78411
APR 18. 15
AMOUNT
**$27.69**
00104038-07